**Dennis J. WILLIS, Respondent,**

v.

**Ginger L. WILLIS, Appellant.**

**No. WD 59202.**

Missouri Court of Appeals, Western District.

Submitted July 03, 2001.

Decided July 24, 2001.

---

Ginger L. Willis, pro se.

James O. Swaney, Jr., Independence, for Respondent.

Before THOMAS H. NEWTON, P.J.; JAMES M. SMART, JR. and HAROLD L. LOWENSTEIN, JJ.

PER CURIAM:

Ginger Willis ("Wife") appeals the trial court's September 11, 2000, judgment and order modifying the decree dated November 1, 1995 that earlier dissolved the parties' marriage. The respondent, Dennis Willis ("Husband"), did not file a brief in response. In the modification order, the trial court reduced the amount of maintenance that Husband is required to pay to Wife on a monthly basis; made the reduction in maintenance retroactive to November 16, 1998, the date the motion to modify was filed; ordered the stay of execution of the previous contempt judgment against Husband to continue as long as Husband executes a voluntary wage assignment; and assessed costs against Wife.

Wife contends that the trial court erred in the following respects: (1) in denying Wife's motion to dismiss based upon Rule 67.03; (2) in reducing maintenance when a request to terminate maintenance was the only relief sought; (3) in reducing Husband's maintenance obligation, in that termination of Husband's employment was the "direct result of [his own] misconduct"; (4) in taking judicial notice of documents relating to Husband's income, without giving appellant a reasonable opportunity to be heard on the issue; and (5) in applying the reduction in maintenance retroactively, in that it may be modified only as to payments which accrued after appellant was served. We affirm in part and reverse in part.

### Factual Background

On November 1, 1995, following a hearing, the Honorable J.D. Williamson dissolved the marriage of the parties pursu-

ant to a petition filed by Husband. The couple's three children were all emancipated at the date of dissolution. In the court's judgment and decree of dissolution of marriage, the court divided the marital property between the parties (including Husband's retirement benefits) and ordered Husband to pay to Wife maintenance in the amount of $1,200.00 per month beginning December 1, 1995. Wife was also awarded attorneys' fees in the amount of $5,000.00 and the costs of the action.

On June 2, 1997, Husband's first motion to modify the dissolution decree as to maintenance and attorneys' fees was denied based upon the court's failure to find any "substantial and continuing change in circumstances." The court also denied Wife's first motion for contempt, filed at the same time, finding that Husband was "now current in his maintenance obligation" and that Wife had failed to prove that Husband "has the present means and capability within which to pay" Wife's attorney's fees.

On May 18, 1998, Husband failed a random drug test on his job with Union Pacific Railroad and was pulled out of service. Although he passed another drug test six days later, he was terminated from his employment with the railroad in June or July of 1998. The final denial of Husband's appeal of that termination action came in July of 1999. Husband testified at the hearing on his motion for modification that his yearly gross income at the time of the dissolution (1995) had been between $40,000.00 and $45,000.00. At the time of his termination in 1998, he said, he was earning approximately $68,000.00. Husband's job history after being terminated at the railroad in 1998 included: one year

at Vai–Con at $8.00 per hour for twenty-four hours a week or less; five or six weeks at Waste Management for $10.00 to $10.75 per hour for forty hours per week; beginning four to five weeks before trial, Husband went to work for Auto Rail, for $14.00 per hour for forty hours a week. His approximate salary at the time of trial, then, was $27,000.00 per year, according to the court's calculation.

On October 22, 1998, pursuant to a second motion for contempt filed by Wife on September 11, 1998, and based upon Husband's failure to pay the required amount of maintenance, the court found at that time, that Husband was in contempt of the court's order for his "willful and contumacious refusal to comply with the orders of this court as to maintenance." The court pronounced judgment as follows: "[P]etitioner is in contempt of the court order of October 25, 1995, to pay the support ordered and $7,200 is the amount due as of this date and is sentenced to imprisonment at the department of corrections county of Jackson until he pays to [Wife] ... the sum of $7,200 for the arrearage of maintenance or until he otherwise be discharged according to law." On October 23, 1998, the court ordered the sentence be served as "Electronic Home Detention."

On November 15, 1998, Husband filed his "Motion to Modify" the maintenance provision of the dissolution decree, which is the subject of this appeal. Two *non-est* returns of service indicated that Wife had not been personally served as late as February 24, 1999. On March 9, 1999, the trial judge noted in court documents the appearance of Wife's attorney with regard to Husband's motion to modify. On March 22, 1999, Husband filed his amended motion to modify.[1] That motion did not in-

---

1. In his amended motion to modify, Husband asserted, *inter alia:*

3. That since the date the original decree was entered, there have been changed cir-

clude a certificate of service on opposing counsel, but Wife's attorney entered his appearance in a document marked "On the Motion to Modify," filed with the court on April 6, 1999. Wife filed her answer, along with a third motion to hold Husband in contempt of court for failing to comply with court orders by being in arrears on his maintenance payments and by not paying attorney's fees the court had ordered him to pay.

Husband's motion to modify and Wife's motion for contempt citation against Husband were both heard by the court on August 23, 2000. At that hearing, upon direct examination by his attorney, Husband testified concerning his lack of education and job skills and about his inability to obtain employment with another railroad:

Q. And at the time of the termination, you had been employed for how long?

A. Twenty-eight years, twenty-seven.

Q. And Mr. Willis, did you graduate from high school?

A. No.

Q. Did you obtain a GED?

A. No.

Q. As far as your job skills, what, how would you describe your job skills?

A. I'm an excellent railroader, engineer, conductor. I think I'm very—

Q. What was your title when you were employed at Union Pacific Railroad?

A. Conductor, road freight conductor.

Q. Have you—have you tried to obtain employment with any other railroad?

A. I've tried about every one in the country.

Q. Specifically, which ones have you?

A. All the way from the Tex–Mex Railroad to Connecticut Southern to every short line, everything they have at the Railroad Retirement Board. Norfolk Southern, CSX, all branches from them; KCS, all of them.

Q. And what has been the response of your applications with other railroad companies?

A. I've had some that were interested but then they never called me for an interview. I think I'm pretty well blackballed from railroading for the random test.

* * *

In its judgment, the trial court found, *inter alia:*

3. That from the court[']s file, the court finds that the salary of the Petitioner at

cumstances so substantial and continuing as to make the terms of said decree unreasonable. As a result of such changed circumstances, a modification of the decree is necessary.

4. That the continuing and substantial changed circumstances undergone by the Petitioner include, but are not limited to:

a. There has been a change in the financial condition of Petitioner in that he is now unemployed and has been unable to secure adequate employment;

b. Petitioner was terminated from his employment that he had maintained for over twenty years;

c. Petitioner's income has drastically decreased;

d. Because of Petitioner's inadequate education and job skills, his earning capacity is nominal;

e. Petitioner does not have the capacity nor the earnings to pay maintenance;

f. Respondent Ginger L. Willis has the ability to earn income and has attain[ed] self sufficiency[.]

As a result of the above "substantial and continuing change of conditions and circumstances," Husband pray[ed] that the Court enter an Order modifying the decree of Dissolution of Marriage to terminate the maintenance retroactive to the date of the service of this Motion; ... and for such further Orders as to this Court shall seem just and proper.

the time of the ... dissolution of marriage was $67,499 per year.

4. That the current salary ... for Petitioner is ... $27,216 per year.

5. That the Petitioner was terminated from his employment with the railroad, after failing a drug test.

6. That said failure was not of a malicious nature or an attempt to reduce his maintenance.

7. That the previous order of maintenance existing at the time of the filing of the Modification was approximately 21.3% of the Petitioner['s] total yearly income.

8. That utilizing the current wage scale $27, 216, the same percentage of maintenance would be $483 per month.

9. That prior to the filing of the Motion to Modify on November 16, 1998, back maintenance was in arrears in the amount of $7,200.

10. That retroactive maintenance to the date of filing of November 16, 1998, equals 22 payment[s] or $10,626.

11. That the arrearage amount to be established by the court is $17,826 less payments $5958.24 for a total of $11,867.76.

The court ordered, adjudged, and decreed "that Maintenance previous[ly] awarded to [Wife] and against [Husband] be modified to the amount of $483 per month retroactive to November 16, 1998"; "that the amount of the arrearage as of today's date is $11,867.76"; and "that the stay of execution in the previous Judgment for Contempt will continue if [Husband] executes a voluntary wage assignment, and continue payments in the amount of $550 a month." Wife appeals.

## Point I

In her first point on appeal, Wife contends that the trial court abused its discretion in denying her motion to dismiss based upon Rule 67.03,[2] in light of Husband's failure to comply with previous orders of the court, i.e., his failure to pay Wife's attorneys' fees or to make the monthly maintenance payments ordered by the dissolution court. Wife contends that, under the circumstances, the court's denial of her motion to dismiss was so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration by the trial court.

### *Standard of Review*

 This court's standard for reviewing the trial court's denial of a motion to dismiss under Rule 67.03 is limited to an abuse of discretion. *See Nelson v. Nelson,* 14 S.W.3d 645, 649 (Mo.App.2000). "Judicial discretion is abused when the order of the trial court is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said the court abused its discretion." *Nelson,* 14 S.W.3d at 649 (*citing Staples v. Staples,* 895 S.W.2d 265, 266 (Mo.App.1995)).

Wife contends that the evidence reveals "a man who consistently intended not to comply with the trial court's judgments for attorney fees and maintenance" unless

2. Rule 67.03 states in pertinent part:
 ... Defendant may also move for an involuntary dismissal of the civil action for *failure of the plaintiff to prosecute or to comply with* these Rules 41 through 101 or *any order of the court.* Any involuntary dismissal shall be without prejudice unless the court in its order for dismissal shall otherwise specify. (emphasis added.)

compelled to do so. She points out that Husband paid nothing toward either judgment for attorney's fees imposed upon him by the court; that within a year he moved for modification of the maintenance order, which motion was denied;[3] that he twice unsuccessfully moved the court to terminate its orders for income withholding; that he spent money on vacations while claiming that he did not have funds to pay the judgments against him; that he "placed himself in a position" where he could not pay maintenance by refusing to seek employment, "which failure to pay was deliberate and intentional so that the trial court found him to be in contempt of court on October 22, 1998"; and that he missed numerous monthly maintenance payments after losing his job with the railroad. Husband has not filed a brief in response.

### *Analysis*

In *Nelson v. Nelson*, 14 S.W.3d 645 (Mo. App.2000), the trial court's denial of a wife's similar motion to dismiss under Rule 67.03 was upheld. The husband in *Nelson* was found to have had a legitimate reason for stopping maintenance payments, based on the fact that he had retired and his income was greatly reduced and on his argument that the wife's receipt of her portion of his pension plan fulfilled his maintenance obligation to her. *Nelson*, 14 S.W.3d at 649. Wife points out that Husband makes no such arguments in this case; instead, he denies that he has enough money to pay anything toward the attorneys' fees judgments against him or enough money to keep up with his maintenance obligation.

The *Nelson* court did not find that the trial court abused its discretion in denying

wife's motion to dismiss. *Id.* Instead, the reviewing court compared the husband's actions in *Nelson* to those of the husband in *Staples v. Staples*, 895 S.W.2d 265 (Mo. App.1995), and concluded that, in contrast to the husband in *Staples* who had not incurred any reduction in income, the husband in *Nelson* stopped paying maintenance when he filed his petition for modification based on the fact he had retired and his income was greatly reduced. In addition, the *Nelson* court stated, the husband's position was that the wife's receipt of her portion of his pension plan fulfilled his maintenance obligation to her; and in keeping with that position, he did not pay maintenance for total of eight months before the hearing. *Nelson*, 14 S.W.3d at 649. By comparison, the court stated, in *Staples*, the husband's position was there was a change in circumstances as to wife's ability to provide for herself; and he made only three maintenance payments from 1990 through 1993, despite having a gross income in excess of $200,000.00 in 1990 and 1991. *Id.*

■ In *Staples v. Staples*, 895 S.W.2d 265, 266 (Mo.App.1995), the trial court dismissed the husband's motion pursuant to Rule 67.03 for failing to comply with previous orders of the court that awarded monthly maintenance payments to the wife. The reviewing court in *Staples* found no abuse of discretion on the facts presented, pointing out that the order with which the husband failed to comply was the very order he sought to modify. *Staples*, 895 S.W.2d at 267. There was ample evidence in that case that the husband's failure to comply with the decree was not the result of any inability to comply, *e.g.*, the husband had a gross income in excess of $200,000.00 in both 1990 and 1991 and

---

**3.** At the same time, the court denied Wife's motion to find Husband in contempt, finding that Husband had brought himself current on

maintenance and that Wife had failed to prove Husband's present means and capability to pay the judgment for attorney fees.

had claimed charitable contributions well in excess of his $4,800.00 annual maintenance obligation each year, yet he made no maintenance payments during or after 1991 and only three in 1990. *Id.* The *Staples* court found no inequity in requiring a party able to comply with a decree to demonstrate that he has abided by its terms before asking the court for a modification of that decree. *Id.* "Parties should not be heard to simultaneously flout and invoke the authority of the court." *Id.*

▮ Wife argues that Husband's modification motion should have been dismissed in this case for failure to comply, stating: "Permitting [Husband] on the one hand to flout the Court's judgments for maintenance and attorney fees and on the other hand to obtain equitable relief under these circumstances was indeed so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration."

We do not agree that the trial court abused its discretion in denying Wife's motion to dismiss based upon Husband's failure to comply with previous court orders. Earlier, on June 2, 1997, in addition to denying Husband's motion to modify, the court also denied Wife's motion for contempt citation for husband's failure to comply with court orders. The court based that ruling on its findings that Husband was "now current in his maintenance obligation" and Wife failed to prove that Husband "has the present means and capability within which to pay" Wife's attorney's fees.

The trial court made the following findings of fact, *inter alia,* in its judgment reducing the amount of Husband's maintenance obligation: the salary of Husband at the time of the dissolution was $67,499 per year; the current salary of Husband is $27,216 per year; Husband was terminated from his employment with the railroad

after failing a drug test; said failure was not of a malicious nature or an attempt to reduce his maintenance; and prior to the filing of the motion to modify, back maintenance was in arrears in the amount of $7,200.

Given that the trial court based its judgment and order reducing Husband's maintenance obligation upon Husband's gross reduction in income, the court apparently recognized that after the loss of his job with the railroad, Husband was unable to satisfy the previous maintenance obligation and therefore, dismissal of his modification motion for failure to comply with the court's prior order that he pay $1,200.00 per month in maintenance was not warranted. Under these circumstances, we do not find that the trial court abused its discretion in drawing this conclusion and in denying Wife's motion to dismiss. Point denied.

## Point II

Wife next argues the trial court erred in reducing the amount of Husband's maintenance obligation because the judgment went beyond the pleadings, in that no pleadings before the court sought reduction as opposed to termination of his arrearage. Further, Wife complains, no evidence before the court applied solely to reduction as opposed to termination, so that the issue of reduction was not tried by consent.

Wife asserts that, pursuant to *In re Marriage of Morris,* 726 S.W.2d 505, 507–08 (Mo.App.1987), the filing of pleadings is intended to frame the issues to be tried, to permit cases to be prepared for trial, and to permit cases to be tried and defended in an orderly manner with the issues concisely stated and well-framed. Wife points out that although Husband alleged his earning capacity was nominal and he had neither

the capacity nor the earnings to pay the maintenance, "nothing in the rest of the body of the ... motion suggested that maintenance should be reduced, rather than terminated." Further, according to Wife, the prayers of both his original and amended motions were for a modification order to terminate the maintenance retroactive to the date of the service of the motion and not for a mere reduction.

It is clear, Wife argues, that Husband did not seek reduction of his maintenance obligation, but sought termination only. Citing *Higgins v. Higgins*, 918 S.W.2d 383, 384 (Mo.App.1996), Wife asserts that although some of the evidence may have been relevant to a reduction in maintenance, any such evidence was at least equally relevant to other issues before the trial court, so that the issue of reduction was not tried by implied consent.[4]

In *Higgins*, where the wife never requested maintenance in her pleadings and never asked leave to amend, the court found that the issue of maintenance was not tried by consent, in that although some of the wife's testimony may have been relevant to the issue of maintenance, it was equally relevant to other issues before the court. *Id.* at 384. Wife asserts that here, although some of the evidence may have been relevant to a reduction of maintenance, the same evidence was at least equally relevant to the issue of termination of maintenance, so that the issue of reduction was not tried by implied consent.

■ Wife argues that in this case, where no reduction was sought and no evidence was received on the exclusive issue of whether maintenance ought to be reduced, the trial court erroneously declared and misapplied the law. Because the trial court implicitly found the evidence was insufficient to warrant termination of maintenance, and since it refused to grant termination, Wife asserts that the judgment should be reversed outright. Wife points out, additionally, no pleadings before the court requested recalculation of the arrearage and that evidence offered concerning the amount of the arrearage was relevant to other issues which were properly before the court. For those reasons, wife says, the trial court's recalculation of the arrearage amount also was necessarily erroneous.

■ We disagree. An action to terminate maintenance is also an action to *reduce* maintenance to zero. Thus, husband's motion to terminate maintenance necessarily included within its parameters a reduction of maintenance. This is sufficiently clear in logic and common sense that no further elaboration is necessary. Neither *Morris* nor *Higgins* involved the precise point in question here. Wife therefore fails to present applicable authority for her position. Point denied.

### Point III

■ Wife asserts, in her third point on appeal, the trial court erred in reducing Husband's maintenance obligation, in that

**4.** Wife refers to *Shoemaker v. Houchen*, 994 S.W.2d 40, 46 (Mo.App.1999), in which the court stated:

"To the extent a judgment goes beyond the issues presented and raised by the pleadings, it is void.".... "Rule 55.33(b) ... provides that '[w]hen issues not raised by the parties are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings'." The implied consent rule applies only when the presented evidence applies solely to a new issue and is not relevant to issues already present in the case. In summary, if evidence applying to a new issue is admitted, without a timely and specific objection, and the evidence is not relevant to issues already present, [the rule] treats the new issue as having been raised in the pleadings.

termination of Husband's employment was the "direct result of [his] misconduct", *i.e.*, failure of a random drug test, which was the sole cause of his reduction in income, and because there was no substantial evidence of any other change in circumstances warranting the reduction. We review the evidence in the light favorable to the decree of the trial court to determine whether the judgment is supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Despite Husband's assertions in his amended motion to modify with regard to his "continuing and substantial changed circumstances", *i.e.*, his inability to earn an income similar to that which he was earning at the time of the dissolution, Wife contends that the evidence is "undisputed" that there was no substantial evidence to support Husband's allegation that he is "now unemployed and has been unable to secure adequate employment," in that he began working for his current employer, Auto Rail, four to five weeks before the trial. In response to Husband's allegations about his reduced earnings capacity, Wife asserts there was no substantial evidence of any change in his earning capacity other than the impact of his having been terminated by Union Pacific. Although Husband's education and job skills are admittedly inadequate, Wife points out, there was no evidence that either his education or his job skills had changed since he was lucratively employed at the railroad.

Wife points to § 452.370.1,[5] which states that modification of maintenance may be granted only upon a showing of changed circumstances "so substantial and continuing as to make the terms unreasonable." Wife cites *Draper v. Draper*, 982 S.W.2d 289, 291 (Mo.App.1998), for the proposition that Husband was obligated to prove "with detailed evidence" that his circumstances had changed so substantially that the prior decree was unreasonable.

Wife further contends since Husband was well aware that failing a random drug test could end his career with the railroad, his termination for this reason did not rise to the level of a "substantial and continuing" change in circumstances. Despite the trial court's finding that Husband did not "maliciously intend" to fail the drug test, or deliberately do so in an effort to reduce his maintenance obligation, Wife states, "[o]ne cannot, either by intentional conduct or by mere irresponsibility, seek relief from the duty of support for termination from employment when the termination was a foreseeable result of one's criminal conduct." Husband's termination can, therefore, be seen as a voluntary act "in and of itself." Wife cites various cases from other jurisdictions in support of her argument that "[a] reduction of income which is self-inflicted does not constitute grounds for modification." *See, e.g., In re Marriage of Van Doren*, 474 N.W.2d 583, 586 (Iowa App.1991).

One Missouri case upon which Wife relies, *Oberg v. Oberg*, 869 S.W.2d 235, 238

---

**5.** That statute reads in pertinent part:
[T]he provisions of any judgment respecting maintenance or support *may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable.* In a proceeding for modification of any child support or maintenance judgment, the court, in determining whether or not a substantial change in circumstances has occurred, shall con-

sider all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse or other person with whom he or she cohabits, and the earning capacity of a party who is not employed.

\* \* \*

Section 452.370.1 RSMo Cum.Supp.1998 (emphasis added).

(Mo.App.1993), involved a change in financial circumstances based on incarceration. The court in *Oberg* examined many of the same foreign cases cited by Wife [6] and came to the conclusion that, as in the situation of a parent who is voluntarily unemployed or underemployed and who accumulates arrearages because of that voluntary inability to pay, a "change in financial condition resulting from the voluntary dissipation of one's talents is not sufficient reason for modifying a child support award." *Id.*[7]

■ Wife overlooks the fact that the *Oberg* court opined that such motions to modify must be dealt with on a case-by-case basis, and enunciated various factors to be considered by the courts in doing so. *Id.* In other words, there is still room for trial court discretion. Also, *Oberg* was a child support case and not a maintenance case. We are not sure whether that makes a difference, and Wife fails to show they must be treated the same. Wife here asserts that the factors set out in *Oberg* compelled Husband to present detailed evidence, such as expert testimony, to sup-

port his position that he can no longer earn the wages he was earning at the time of dissolution. She states the trial court erred in modifying the award since Husband presented no substantial evidence that his earning potential had decreased or that the railroad's "blackballing" him would continue indefinitely. We disagree. Husband's evidence was reasonably detailed and specific, and the court, having some knowledge of the value of unskilled labor and having information as to Husband's background and education, was capable of resolving the factual issues as to earning ability. Even in the *Nelson* case, where the husband's decision to take early retirement was considered a *voluntary* reduction in income by the court, the reviewing court concluded there was sufficient evidence of changed circumstances to justify modification of husband's maintenance obligation, although not enough to warrant termination of that obligation. *Nelson,* 14 S.W.3d at 650–51.

■ It is true in the case at hand that Husband's income reduction was self-inflicted. many times when a job is lost, it is

---

**6.** The cases cited in *Oberg* to support this proposition include: *Mooney v. Brennan,* 257 Mont. 197, 848 P.2d 1020, 1023 (1993); *In re Marriage of Phillips,* 493 N.W.2d 872, 877 (Iowa Ct.App.1992); *Davis v. Vance,* 574 N.E.2d 330, 331 (Ind.Ct.App.1991); *Div. of Child Support Enforcement v. Barrows,* 570 A.2d 1180, 1183 (Del.Super.1990); *Cole v. Cole,* 70 Ohio App.3d 188, 590 N.E.2d 862, 865–866 (1990); *Ohler v. Ohler,* 220 Neb. 272, 369 N.W.2d 615, 618 (1985); *Koch v. Williams,* 456 N.W.2d 299, 301 (N.D.1990); *Parker v. Parker,* 152 Wis.2d 1, 447 N.W.2d 64, 65 (1989); *Noddin v. Noddin,* 123 N.H. 73, 455 A.2d 1051, 1053 (1983).

**7.** The court stated although the incarceration itself was not voluntary, it was the "foreseeable consequence" of his voluntary and intentional illegal behavior; therefore, the mere fact of incarceration does not excuse the obligation to support one's children. *Oberg,* 869 S.W.2d at 238. The court found, however, that "unique circumstances exist when a par-

ent who is incarcerated does not have assets to satisfy ... a court ordered child support award"; that the trial court should "consider each such situation on a case-by-case basis"; and that the requirement to pay child support is not punitive but is an obligation to satisfy the needs of the child as completely as the parent's circumstances reasonably permit. *Id.*

The court found, in Oberg's case, that while he lacked the assets to satisfy the child support obligation while incarcerated, he anticipated release in two years, and "Oberg's prior employment experience indicates that he has sufficient earning potential to continue his child support obligation at its existing level [fifty dollars per week], even considering that he will probably experience reduced income immediately after incarceration and for some time compared to the income he realized prior to incarceration." *Id.*

due to some failure or misstep on the part of the employee. Such a reduction in income is not the same as a voluntary and deliberate reduction of income. Wife fails to distinguish between a reckless and irresponsible reduction of income and a voluntary and deliberate reduction of income. Even if *Oberg* stands for the proposition that illegal misconduct resulting in an involuntary reduction of income *may* be treated the same as a deliberate reduction in income in order to defeat maintenance or child support obligations, Wife has no authority providing that such misconduct *must* be so treated. This was not a case in which the trial court found a deliberate purpose of avoiding these obligations. Rather, the court recognized that the ingestion of marijuana, though reckless, irresponsible and illegal, was not for the purpose of intentionally reducing his income and defeating the obligations in question. We believe the trial court's decision to modify the maintenance objection was not an abuse of discretion. Point denied.

## Point IV

■ According to Wife's fourth point on appeal, the trial court erred in "taking judicial notice" of documents relating to Husband's income, which had been admitted into evidence at the 1995 dissolution hearing, without giving Wife a reasonable opportunity to be heard on the issue. Courts may not take judicial notice of the facts in one proceeding to decide another, but are only to consider matters of record in the current proceeding, Wife asserts. She contends the trial court abused its discretion in taking judicial notice of these documents in that she was not afforded an opportunity to be heard at trial with regard to the document.

In the judgment of September 11, 2000, the trial court stated it found, "from its file, that the salary of the Petitioner at the time of the original judgment and decree of dissolution of marriage was $67,499 per year." The trial court then used that figure (evidently derived from a tax return in the dissolution file) to determine what percentage Husband's $1,200 per month maintenance obligation represented of his monthly income, arriving at the figure of 21.3%. The court determined, based upon this computation and Husband's current yearly income of $27,216, Husband's current maintenance obligation should be $483. Wife asserts the trial court's figure of $67,499 was in error; therefore, the percentage derived from it was necessarily in error, and the court's use of that percentage to arrive at the new maintenance obligation figure was thus erroneous, as well.

Wife asserts that the correct figure for Husband's income the year of the dissolution was $57,192, based upon an extrapolation of his income from the first nine months of 1995; that the $1,200 monthly maintenance represented 25.2% of that corrected income figure; and that by using this corrected percentage, the trial court should have calculated Husband's new maintenance obligation to be $571. We conclude that by failing to make the facts of which it took judicial notice a part of the record at trial, the trial court deprived Wife of her opportunity to be heard with regard to its conclusion that those facts were correct.

■ Wife supports her argument further by stating: (1) that the $67,499 figure does not appear in the transcript;[8] (2) that there was no such finding in the original judgment and decree of dissolution of marriage; and (3) that the trial court gave

---

8. The figure $67,900 does appear in the transcript, but Husband testified that was his esti-

mated income the *last year* he worked for the railroad, which would have been 1998.

the parties no notice at the time of the hearing that it would take judicial notice of that purported fact. Wife asserts the trial court "could not consider that purported fact as a matter of judicial notice," in that "although the court can take judicial notice of its own records, courts do not ordinarily judicially notice the records and facts in one proceeding in deciding another and different one, because it is unjust for a court to decide a case upon evidence which a party has been afforded no opportunity to refute." [9]

■ Wife points out that even if the trial judge were permitted to take judicial notice of this fact (Husband's prior $67,499 yearly income), she still had the right to a reasonable opportunity to refute this "purported fact" at trial. Wife argues in order for a fact contained in a document in the trial court's file to be considered by the court in arriving at its judgment, it is necessary for someone either to offer the document into evidence or to read portions of the document into evidence, or ask the court to take judicial notice of its own file. *See Mince v. Mince*, 481 S.W.2d 610, 614 (Mo.App.1972). "Even though judicial notice is taken of a fact, the opposing party still has a right to offer rebuttal evidence." *Morrison v. Thomas*, 481 S.W.2d 605, 607 (Mo.App.1972). If there is nothing in the record to indicate to the opposing party that judicial notice of a fact in a court document is being requested or taken, Wife argues, obviously the party cannot take advantage of that right.

■ A review of the decree in the dissolution shows no specific finding as to Husband's earnings was set forth. Thus, we do not know exactly what the dissolution court believed Husband's earnings to be. The dissolution case was tried before a different judge, so Judge Scoville did not have "lodged within his breast" the determination of Husband's income. If we knew what the dissolution court had determined Husband's income to be in arriving at the original maintenance obligation, we would know if Wife is bound by *res judicata*. "The doctrine of *res judicata* precludes parties from contesting matters that the parties have had a full and fair opportunity to litigate." *Lay v. Lay*, 912 S.W.2d 466, 471 (Mo. banc 1995): "*Res judicata* applies 'not only to points and issues upon which the court was required ... to form an opinion and pronounce judgment, but to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time'." *Id. (quoting King Gen. Con-*

9. Wife cites *Mince v. Mince*, 481 S.W.2d 610, 613–614 (Mo.App.1972) for this proposition. The *Mince* court stated:

The rationale, ... which permits an adjudication of rights in an independent proceeding on the basis of proof made in a prior cause is validly applied only *where the subsequent proceeding is ancillary to the former* and *the decision in the former case is so recent* that the evidence remains fresh in the mind of the judge and continues "lodged in his breast." An ancillary proceeding, in legal usage, is one subordinate to or in aid of another primary action, in this sense, a motion for an attorney fee brought consequent to a motion to modify a decree of divorce is adjunctive of and ancillary to that motion to modify.

*Mince*, 481 S.W.2d at 613–14 (emphasis added) (internal citation omitted). The *Mince* court reiterated the following rules: "The facts of which a trial court does take judicial notice must be offered in evidence so as to become a part of the record in the case[ ]" (*quoting Randall v. St. Albans Farms, Inc.*, 345 S.W.2d 220, 223 (Mo.1961)); judicial notice is merely a rule of evidence and if facts judicially noticed are disputable, the other party may rebut them; and even where the evidence comes within the judge's duty of knowledge, the appellant would not have been foreclosed from rebutting that evidence. *Id.* at 614–15.

*tractors v. Reorganized Church,* 821 S.W.2d 495, 501 (Mo. banc 1991)). Here, however, because the trial court did not know the figure used by the dissolution court, and instead relied upon an exhibit, the 1994 tax return of Husband, we conclude this was not a matter of *res judicata* but of judicial notice.[10] The court used a formula, which included Husband's earnings at the time of the dissolution, to calculate an appropriate reduction in maintenance. Therefore, the figure used by the court for his earnings at that time has some apparent significance. While the 1994 tax return might be highly persuasive as an indication of what the dissolution court believed Husband's income to be, and while the court may or may not find persuasive any rebuttal to that figure provided by Wife, we believe Wife is correct that the case must be remanded to allow Wife an opportunity to address the issue of Husband's earnings at the time of the dissolution, and the significance of the tax return in resolving that issue. Therefore, we will vacate the modification and remand for reconsideration.

## Point V

In her final point, Wife asserts the trial court erred in applying the reduction in Husband's maintenance obligation retroactively to November 16, 1998, the date that

Husband filed his motion to modify. Wife argues the trial court lacked jurisdiction to modify the order as to installments which accrued before Wife was served or waived service, in that such an order may be modified only as to installments which accrued subsequent to the date of personal service on the appellant. The court's action was also erroneous, Wife argues, because it went beyond the pleadings, in that Husband's motion to modify sought relief retroactive only to the date of service.

Wife asserts the trial court lacked the authority to modify the maintenance obligation retroactive to a date before the service of summons, since the order may be modified only as to support or maintenance installments which accrued subsequent to the date of personal service, pursuant § 452.370.6, RSMo Cum.Supp.1998.[11]

Husband filed his original motion on November 16, 1998. A *non-est* return of service was filed with the trial court on December 24, 1998; another *non-est* return of service was filed with the trial court on February 24, 1999. In court documents dated March 9, 1999, the trial court judge noted the appearance of Wife's attorney in regard to Husband's motion to modify. On March 22, 1999, Husband filed his amended motion to modify, that motion did not include a certificate of service to

---

**10.** The trial court did not specify it was relying upon the tax return, but the figure used by the trial court obviously came directly from the tax return entered in evidence in the dissolution case.

**11.** The relevant part of that statute reads:

The court shall have continuing personal jurisdiction over both the obligee and the obligor of a court order for child support or maintenance for the purpose of modifying such order. .... The order *may be modified only as to support or maintenance installments which accrued subsequent to the date of personal service* .....

Section 452.370.6, RSMo Cum.Supp.1998 (emphasis added). 24 Am.Jur.2d *Divorce and Separation* § 849 (1983) (emphasis added) states:

Under the Uniform Marriage and Divorce Act, the provisions of a decree respecting maintenance and support generally can be modified only as to installments accruing subsequent to the motion for modification. The law of a particular jurisdiction that has adopted the Act may, however, allow modification of provisions of a judgment awarding maintenance or support only as to installments *accruing subsequent to the time that the nonmoving party receives due notice of the filing* of a modification petition.

opposing counsel. Wife's attorney formally entered his appearance as Wife's attorney in a document filed with the trial court on April 6, 1999.

■■■ Based on the foregoing dates, according to Wife, the court had the authority to retroactively modify the maintenance obligation only to a date subsequent to the April 6, 1999, formal entry of appearance by Wife's attorney; or, at the most, effective only to a date subsequent to the trial court's March 9, 1999, notation of the appearance of Wife's attorney with regard to the motion to modify. Both of those items could be understood to effect a general appearance waiving the necessity of any further effort at making personal service. There is, however, nothing in the record, Wife points out, that supports the argument that service was had or waived on November 16, 1998, the date of filing of Husband's original motion to modify. The trial court, therefore, erroneously applied the law in modifying the maintenance award retroactive to the November 16, 1998 date, since there had been no service or waiver of service as of that date.

Husband's motion also specifically prayed for relief to be "retroactive to the date of the *service* of this Motion" (emphasis added). In view of the statutory language and Husband's pleading, we conclude that the trial court's order that retroactively modified the maintenance obligation prior to March 9, 1999, (the date of a general appearance by Wife's attorney) was an erroneous application of the law by the trial court. We, therefore, reverse that part of the judgment and remand to the trial court for judgment to be entered accordingly.

## Conclusion

The trial court did not abuse its discretion in entertaining Husband's motion for modification rather than dismissing the motion. However, because the court took judicial notice of the 1994 tax return without notice to Wife, and utilized figures from the tax return in determining the reduction in maintenance, we reverse and remand the modification decree. On remand, the trial court shall consider any additional arguments Wife wishes to make related to the court's judicial notice of the 1994 tax return, and pertinent to the issue of Husband's earnings at the time of the dissolution. The court shall re-determine Husband's earnings at the time of the dissolution. The court can then determine the appropriate amount of maintenance as adjusted by any reasonable approach justified by the evidence. Further, any retroactive modification of maintenance in an amount determined by the court shall be effective as of March 9, 1999, for the reasons stated in the opinion. The judgment is reversed and remanded for further proceedings in accordance with this opinion.