**Michael LAYDEN,**
**Petitioner/Appellant,**

v.

**Nicole LAYDEN, Respondent.**

**No. ED 104388 and ED 104740**

Missouri Court of Appeals,
Eastern District.

FILED: March 28, 2017

Brittany A. Brown, Chesterfield, MO, for Appellant.

Kathleen N. Aubuchon, Farmington, MO, Christina L. Kime (co-counsel), Piedmont, MO, for Respondent.

## Opinion

Lisa S. Van Amburg, Judge

Appellant Michael Layden (Husband) appeals the trial court's judgment of modi-

fication, as well as its judgment awarding Respondent Nicole Layden (Wife) attorney's fees on appeal. We affirm in part and reverse in part.

## Background

On July 2, 2010, the marriage of Husband and Wife was dissolved. Pursuant to the terms of the parties' Stipulation Agreement, Husband was to pay to Wife the sum of $500 per month in maintenance. On or about September 13, 2012, Husband initiated the underlying action by filing a motion to modify requesting the reduction or termination of his maintenance obligation. He filed a first amended motion to modify on or about February 13, 2013. Wife filed a counter-motion to modify seeking an increase in maintenance.

According to tax documentation filed by Wife, her social security income totaled $11,724.00 [1] in 2010 and $12,749.00 in 2015. According to Husband's tax returns, he had a gross income of $46,239.00 in 2010 and $41,884.06 in 2015. According to the 2014 tax returns of Husband and his current wife, Husband's total household income is $104,843.00.

At trial, Wife testified in support of her request for increased maintenance. She testified that her sole sources of income were social security and the maintenance provided by Husband. Wife was declared disabled in 1996 after a diagnosis of manic bipolar with suicidal tendencies, and she had not worked since that time.[2] Wife testified that in addition to this diagnosis, she also suffered from degenerative disc disease, osteoporosis, psoriatic arthritis, rheumatoid arthritis, low thyroid, and high blood pressure, among other ailments. She

testified that she took 28 medications daily. Some of her cost of medication was covered by Medicare, Part B, and the premium was taken out of her social security disability payment. Wife testified that since 2009, she had trouble meeting her medical expenses and incurred debt. She testified that she had no pension, 401k account, or retirement accounts in her name.

Wife testified that she rented a 1,200 square foot home. At the time of the divorce, she and Husband lived in a 2,800 square foot Victorian home. She testified that her monthly income, including the $500 maintenance payments, totaled $1,458.00 and her monthly expenses totaled $1,761.55,[3] which included rent, utility payments, automobile expenses, insurance premiums, payments on installment contracts, and miscellaneous living expenses. She testified that the year of her divorce, she was diagnosed with three extreme medical issues, which resulted in a debt of $2,000. She testified that from January through April 2015, Husband stopped making maintenance payments, and she successfully obtained a court order garnishing Husband's wages. She testified that she experienced significant financial hardship during this period.

Husband testified in support of his request to reduce or terminate his maintenance obligation to Wife. He testified that he starting have problems paying maintenance after his employer demoted him from deputy warden to case manager II and transferred him to a correctional center 60 miles from his home. Husband testified that he was demoted after a disciplinary action by his supervisor for being

---

1. Wife's gross wages totaled $14,333.00 in 2010 and $18,844.00 in 2015.

2. Wife was disabled at the time of the dissolution.

3. Wife listed $1,981.60 as her average monthly living expense in her Statement of Income and Expense, filed as Petitioner's Exhibit 11.

"unprofessional in my behavior." He testified that he offended his female supervisor, but did not intend to do so. As a result of the demotion, Husband testified that his income decreased by $600.00 per month.

Husband testified that after his demotion, he applied for a housing manager position with the Department of Corrections. He received an interview, but was not selected. He testified that he was on a register for different positions within the Department of Corrections that would allow him to "move up the ladder again." He took a part-time job at Lowe's to try to make up for the difference in his income caused by the demotion. However, Husband admitted that he stopped making maintenance payments to Wife because he could not afford to pay them after his demotion. Before Husband's wages were garnished, Husband testified that his current wife had to help him pay maintenance, and he testified that he depleted his savings account. Husband testified that his average monthly expenses were $3,044.50.[4] He testified that some of his monthly expenses were shared with his current wife, including his monthly mortgage payment and his household expenses. Husband admitted that their combined monthly household income totaled $6,281.51.

Husband provided testimony that if his maintenance obligation was terminated, Wife would be eligible for public assistance, including food stamps and energy assistance. Specifically, he testified that if his $500 maintenance payment was terminated, Wife would be eligible for $800 in public assistance from different agencies.

The trial court entered a judgment denying Husband's motion to modify. It found Husband's testimony regarding his demotion not credible and declined to order a reduction or termination of maintenance based on Husband's misconduct. It further found that Husband did not have a house payment and that the house in which he resided was his current wife's premarital property. The trial court also found that he was not responsible for the association fees for the community in which the home was located. It found that Husband's unilateral termination of his maintenance payments during the pendency of the action was unreasonable. The court found this caused a significant hardship on Wife, who was unable to obtain her prescriptions and had to borrow money from friends and family to meet her basic needs. It also found that Husband admitted that during the period of time he had to pay $750 per month in maintenance to Wife (he was paying an additional $250 per month in maintenance under the garnishment), he and his current wife were able to pay all of their household bills. It further found that based on Wife's Statement of Income and Expenses, her expenditures exceeded her income by $800.00 per month. The court found that "Wife is in need of additional maintenance" and that "Husband has the ability to pay." The trial court found that Husband had a greater ability to pay attorney's fees than Wife and that Husband's conduct during the pendency of the suit was such that Husband should be assessed the attorney's fees of Wife. The trial court entered a judgment granting Wife's counter-motion to modify. Husband was ordered to pay $800.00 per month, as well as $2,000.00 in Wife's attorney's fees. This appeal follows.

### Standard of Review

▇▇▇▇ In a court-tried action to modify a maintenance award, we conduct our re-

---

**4.** In his testimony, Husband initially agreed that his monthly expenses totaled $2,593.00. However, he later testified that his average monthly expenses totaled $3,044.55. Using either figure, he testified that he experienced a deficiency every month.

view in accordance with the standards enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will uphold the court's judgment unless the judgment is not supported by the evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Id.* "An appellate court will defer to the trial court on its decision to modify a maintenance award even if the evidence could support a different conclusion." *Id.*

The evidence and reasonable inferences drawn therefrom are viewed in the light most favorable to the prevailing party. *Id.* The trial court is in a superior position to judge witness credibility and sincerity and, as such, may accept all, part, or none of any witness's testimony. *Id.* All fact issues upon which the trial court failed to make specific findings are considered as having been found in accordance with the judgment. *Rustemeyer v. Rustemeyer*, 148 S.W.3d 867, 870 (Mo. App. E.D. 2004); Rule 73.01. The trial court's judgment modifying maintenance is reviewed for an abuse of discretion. *Lee v. Gornbein*, 124 S.W.3d 52, 56 (Mo. App. W.D. 2004).

### Discussion

Husband raises four points on appeal. In Point I, he argues that the trial court erred when it granted Wife's counter-motion to modify because she did not present sufficient evidence of her past and current expenses at trial, thereby failing to meet her burden of establishing a substantial and continuing change of circumstances. In Point II, he argues the trial court erred when it denied his motion to modify based on its finding that his demotion was the result of voluntary misconduct and, as a result, the subsequent decrease in his income was not a substantial and continuing change in circumstances warranting a reduction or termination of his maintenance obligation. In Point III, Husband argues the trial court erred when it denied his motion to modify because it improperly considered the income of Husband's current wife. In Point IV, he argues the trial court abused its discretion in awarding Wife attorney's fees on appeal because it failed to take any testimony, receive any evidence, or place any argument on the record regarding relevant facts, as required under Mo. Stat. Rev. § 452.335.1.

Reversal of a modification order is appropriate only when the order is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Id.*; *Wilburn v. Wilburn*, 801 S.W.2d 78, 79 (Mo. App. E.D. 1990). Under § 452.370.1, RSMo Supp. 1989, modification of maintenance requires a showing of changed circumstances so substantial and continuing as to make the terms of the dissolution decree unreasonable. The statutory standard for modification is intended to be strict so as to discourage recurrent and insubstantial motions for modification. *Sanders v. Sanders*, 797 S.W.2d 874, 876 (Mo. App. S.D. 1990). The burden of proving substantial and continuing change rests with the moving party. *Mendelsohn v. Mendelsohn*, 787 S.W.2d 321, 323 (Mo. App. E.D. 1990).

In Point I, Husband argues Wife presented insufficient evidence of a continuing and substantial change in circumstances to support her counter-motion to modify seeking an increase in maintenance. We agree.

Wife presented evidence of her income, as well as testimony regarding her monthly living expenses, which exceeded her income. She testified that at the time of the original dissolution action, she agreed to a maintenance award of $500 before leaving her marital home. She also testified that in the year prior to the dissolution, she re-

ceived three significant medical diagnoses. However, Wife failed to present how her circumstances changed so substantially and continually as to warrant an increase in maintenance.

While Wife provided detailed testimony of her expenses, the record is devoid of evidence of her expenses at the time of the dissolution. Wife testified that as a result of her medical conditions, she incurred debt that totaled $2,000. However, Wife did not present testimony that such medical expenses were unforeseen at the time of dissolution or, alternatively, were not fully realized at the time of dissolution. In contrast, the court of appeals in *Zalar v. Harrington* affirmed an increase in maintenance where it was uncertain whether the wife, after an injury pre-dating the dissolution, would be able to become self-supporting or reach her pre-injury earning capacity. 786 S.W.2d 883 (Mo. App. E.D. 1990). After the dissolution and following a thirteen-month rehabilitation program, the wife presented definitive evidence that her pre-dissolution injury placed a permanent limitation on her future earning ability. *Id.* at 884. The court found that this evidence, paired with the husband's remarriage and increased annual income, constituted a change in circumstances sufficient to justify modification. *Id.* at 885; *see also Steib v. Steib*, 672 S.W.2d 740, 741 (Mo. App. E.D. 1984) (increase in maintenance justified where there is an adverse change in wife's physical and mental condition and the husband's earnings increased).

We find *Fulp v. Fulp* instructive. 808 S.W.2d 421 (Mo. App. W.D. 1991). There, the court of appeals reversed an order of modification increasing monthly maintenance where the wife testified about her health problems and increase in living expenses. *Id.* at 423. The court held that although the wife testified that her health problems made her job difficult, she made

no showing that her health problems affected her current earning capacity. *Id.* Similarly, it held that "[w]hile the wife's stipulated living expenses exceeded her income from all sources, she provided no basis for demonstrating a change in her own financial needs since the dissolution." *Id.*

We also find *Schwartz v. Johnson* guides our decision here. 192 S.W.3d 752, 754 (Mo. App. W.D. 2006). There, the wife suffered prior to her marriage a closed head injury when she fell from a horse, causing brain damage. *Id.* at 754. At the time of dissolution, the injury and its implications for the wife's earning potential was known. *Id.* The trial court granted the wife's motion to modify her maintenance award and, in support of its finding, the court found that the wife was totally disabled and unable to support herself through employment and income producing property, and that her cost of living had increased. *Id.* It further found that the husband's earnings had increased and that his new wife was capable of contributing toward the household expenses. *Id.* The court of appeals reversed, finding that detailed evidence of changed circumstances rendering the original award unreasonable was not presented by the wife. *Id.* at 755. It held that the trial court erred in finding a change of circumstances in the wife's disability and inability to support herself through employment because this was true at the time of separation and dissolution as well. *Id.* It held that the wife was disabled and receiving disability benefits at the time of the separation and dissolution and her continuing disability was not a change of circumstances. *Id.* It further found that although the wife presented evidence concerning her current income and expenses, she failed to present any evidence of her expenses at the time of the original dissolution. *Id.* at 756. As a result, she was unable to provide sufficient evidence of a

substantial and continuing change of circumstances sufficient to support her motion for modification.

Like the wife in *Fulp*, Wife here failed to present any evidence of how her living expenses changed since the dissolution. Furthermore, she failed to present any evidence demonstrating how her medical expenses were unanticipated or exceeded the amount contemplated at the time of the dissolution. Furthermore, like *Schwartz*, Wife was disabled and collecting social security at the time of the original dissolution. Her continuing disability, however, is not a change of circumstances sufficient to support a modification. Furthermore, we find no evidence in the record of her expenses at the time of dissolution. As a result, Wife cannot show a substantial and continuing change of circumstances sufficient to support her counter-motion to modify.

Wife cites several cases in support of her contention that the trial court's increase in maintenance was proper. However, those cases are readily distinguishable from the evidence here. In *Runez v. Runez*, the court of appeals upheld a modification based on the husband's increased income, as well as the wife's voluntary move to California, where her living expenses were substantially higher than in Missouri. 68 S.W.3d 608, 611 (Mo. App. S.D. 2002). In *Oliver v. Oliver*, the court of appeals affirmed an increase in maintenance based on evidence that the wife's monthly income was roughly half what it was when the original decree was entered, the wife had recurring medical problems hindering her ability to work, and the husband's business was improving financially. 710 S.W.2d 942, 943 (Mo. App. E.D. 1986). Similarly, the wife in *Cigno v. Cigno* introduced evidence of her current and previous income and expense statements to support her contention that her expenses had in-

creased in the four and a half years since the last modification. 723 S.W.2d 930, 932 (Mo. App. E.D. 1987). The wife in *Cigno* also introduced evidence of the husband's greater ability to provide for her needs, and the court of appeals affirmed the trial court's modification, finding no abuse of discretion. *Id.* at 932–33.

In contrast, here, Wife merely presented testimony of her current expenses in support of her contention that those expenses were reasonable. She did not introduce evidence of prior expenses, a substantial change in those expenses, or a substantial change in her income. Wife argues that the cases she cites in her brief stand for the proposition that a trial court may properly consider a husband's increase in income as a change of circumstances supporting an increase in maintenance. We agree. However, a husband's increase in income alone cannot support a modification.

Wife presented insufficient evidence of substantial and continuing changes in her circumstances sufficient to support an increase in maintenance. The lack of proof of any substantial and continuing change in circumstances necessitates reversal of the increase in maintenance. *Fulp*, 808 S.W.2d at 423. Point I is granted.

■ In Points II and III, Husband challenges the trial court's denial of his motion to modify to decrease or terminate his maintenance obligations to Wife. In Point II, Husband argues the trial court erred when it found that he committed misconduct in his employment and, as a result, his decrease in income was not a substantial and continuing change in circumstances warranting a reduction or termination of his maintenance obligations.

Husband was demoted from deputy warden to corrections case manager II as the result of at least three acts of misconduct. The demotion resulted in a decrease in his

income. The trial court made a finding of fact that "Husband behaved inappropriately at work and was unprofessional and made numerous discriminatory statements in the presence of other female superior officers." It further found that while Husband denied such statements at trial, his testimony was not credible on that issue.

Missouri courts have consistently held that a voluntary loss of employment is not a substantial and continuing change of circumstance such as to allow modification. *Leslie v. Leslie*, 827 S.W.2d 180, 183 (Mo. banc 1992). For instance, a spouse's decision to take early retirement is considered a voluntary reduction in income and cannot support a reduction in maintenance. *Id.* Furthermore, in spite of a reduction in income, the trial court may impute income to a spouse according to the spouse's ability to earn by using his or her best efforts to gain employment suitable to the spouse's capabilities. *Klinge v. Klinge*, 554 S.W.2d 474, 477 (Mo. Ct. App. 1977). A party's past, present, and anticipated earning capacity is competent evidence of the party's ability to pay maintenance. *Eaton v. Bell*, 127 S.W.3d 690, 695 (Mo. App. W.D. 2004) (internal citations omitted).

We find *Eaton v. Bell*, 127 S.W.3d 690 (Mo. App. W.D. 2004) instructive to our analysis on this point. In *Eaton*, the husband introduced evidence that his employment as an emergency room physician was terminated and his staff privileges revoked after an investigation was conducted regarding a patient's death while under his care. *Id.* at 695. He contended that the trial court's findings that his unemployment was voluntary and that he was capable of earning a substantial income were not supported by substantial evidence and were against the weight of the evidence. *Id.* In support, he argued that since losing his job, he attempted without success to become employed as a physician by applying to thirty different hospitals around the country. *Id.* The court of appeals affirmed the trial court's finding, holding that the evidence showed that the husband's job search was limited and that he was well-educated and highly trained with substantial work experience in several fields. *Id.* As a result, the court of appeals found that the husband's unemployment was voluntary and that he was capable of earning substantial income. *Id.*

Here, Husband's actions at work constitute a voluntary reduction in income. Like the husband in *Eaton*, Husband experienced an adverse employment action as the result of his conduct in his professional capacity. Husband, unlike the husband in *Eaton*, however, was not terminated from his employment. Rather, he was demoted and provided with decreased pay. He remains on the rolls at the Department of Corrections and may be eligible for a promotion. This shows Husband is capable of securing a similar position in the future. Furthermore, since the demotion, Husband obtained part-time employment to supplement his income. This supports Wife's contention that Husband has the ability to earn substantially the same income as that prior to his demotion.

Husband points to *Willis v. Willis*, 50 S.W.3d 378 (Mo. App. W.D. 2001) to support his position that his demotion and subsequent reduction in income was not voluntary or deliberate. In *Willis*, the wife argued that the husband's termination from his employment because he failed a random drug test at work constituted a voluntary and deliberate reduction of income. *Id.* at 388–89. The court of appeals disagreed, holding that the wife failed to distinguish between a reckless and irresponsible reduction of income and a voluntary and deliberate reduction of income. *Id.* at 389. The court agreed with the trial court when it recognized that the ingestion

of marijuana, though reckless, irresponsible, and illegal, was not for the purpose of intentionally reducing his income and defeating the obligations in question. *Id.* As a result, the court held that the maintenance reduction was not an abuse of discretion. *Id.*

Husband also relies on *Reese v. Reese*, 885 S.W.2d 39 (Mo. App. S.D. 1994). There, the husband sought the termination of his maintenance obligation after a decrease in his income following an investigation by the Missouri department of insurance. *Id.* at 40. The husband argued that as a result of the investigation and adverse publicity surrounding that investigation, he had been unable to find employment and that his income was insufficient to meet his expenses. *Id.* The trial court reduced the husband's monthly maintenance obligation, and he appealed, arguing that the trial court should have terminated maintenance in its entirety because his unemployment was involuntary. *Id.* at 41. The court of appeals affirmed the trial court, citing deference to the trial court's order in the absence of an abuse of discretion. *Id.* It held that the trial court was not required to believe that the husband was incapable of earning some income either within or outside the geographic area where he was then living. *Id.* However, the court of appeals did not comment on the husband's claim that his unemployment was involuntary, nor does the court's opinion include whether the trial court deemed his unemployment involuntary. Therefore, *Reese* does not provide us with guidance as to the issue of whether Husband's demotion was voluntary or involuntary under Missouri law. Further, *Willis* is distinguishable from the facts here. The trial court concluded that Husband behaved inappropriately at work and was unprofessional and made numerous discriminatory statements. Such intentional conduct cannot be characterized as reckless and irresponsible behavior akin to the ingestion of an illegal drug resulting in the failure of a random drug test. Point II is denied.

In Point III, Husband argues that the trial court erred when it improperly considered the income of his new wife in its evaluation of Husband's motion to modify. Mo. Rev. Stat. § 452.370 provides, in relevant part: "In a proceeding for modification of any child support or maintenance judgment, the court, in determining whether or not a substantial change in circumstances has occurred, shall consider all financial resources of both parties, *including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse or other person with whom he or she cohabits*, and the earning capacity of a party who is not employed." (emphasis added). Thus, the extent to that household expenses are shared with a cohabitant is relevant in determining whether a change in circumstances has occurred. *Payne v. Payne*, 206 S.W.3d 379, 386 (Mo. App. E.D. 2006) ("Boyfriend's income correctly would be included in the court's consideration of her financial resources and the extent to which he shares or should share Wife's expenses.")

Husband offered into evidence his statement of income and expenses, and Husband testified that those expenses represented the portion of household expenses for which he was responsible. He testified that he and his wife shared a joint bank account, and he agreed that his current wife's income "goes into the same pot, so to speak, as where [his] household bills are paid." Based on Husband's testimony and the plain language of the statute allowing the trial court to consider expenses shared by a spouse, we find no error in the trial court's consideration of Husband's current wife's income when evaluating whether a change of circumstances occurred suffi-

cient to modify maintenance. Point III is denied.

In his final point, Husband argues the trial court abused its discretion in awarding Wife attorney's fees on appeal.[5] Following the trial court's judgment granting Wife's counter-motion to modify and Husband filing his appeal, the trial court entered a Supersedeas Appeal Bond at the request of Husband. Wife then filed a petition for attorney's fees on appeal on the basis that she did not have funds to pay an attorney to represent her in the appeal, and the motion was set for hearing. Husband did not appear for the hearing, and the trial court entered a judgment awarding attorney's fees on appeal to Wife. Husband challenges that judgment on appeal, arguing that Wife failed to meet her burden under Mo. Rev. Stat. § 452.355, which provides:

> Unless otherwise indicated, the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in the attorney's name.

Husband argues the trial court was required to consider a number of "relevant factors," including the financial history of the parties since the order being appealed,

before it can award attorney's fees on appeal. Wife argues in response that Husband failed to appear at the hearing on her motion for attorney's fees on appeal and, therefore, waived his right to challenge the court's award.

The trial court is considered an expert as to the necessity, reasonableness, and value of attorney's fees for both trial and appellate work. *Crawford v. Crawford*, 986 S.W.2d 525, 533 (Mo. App. W.D. 1999). "The party requesting an award of attorney's fees has the burden of proving entitlement to such award." *Potts v. Potts*, 303 S.W.3d 177, 196 (Mo. App. W.D. 2010) (internal citations omitted). "In determining the propriety of an award of appellate attorney's fees in a dissolution action under Section 452.355.1, the court must consider the financial history of the parties since the dissolution being appealed was granted." *Id.* The party contesting the award of fees bears the burden of showing that the trial court abused its discretion. *Id.* However, we presume the trial court's award is correct and we will reverse the award only upon a showing that the trial court has abused its discretion. *Id.*

We find *Alabach v. Alabach*, 485 S.W.3d 386 (Mo. App. E.D. 2016) determinative on this point. There, the wife sought and was awarded attorney's fees on appeal. *Id.* This court reversed, holding that "the record is totally inadequate to permit any evaluation on appeal of the propriety of the court's order allowing fees for the appeal." *Id.* at 387. It reasoned that the trial court did not make a record of the hearing on the motion, took no testimony, and received no evidence at the hearing. *Id.* The court further found the trial court's judgment on

---

5. Husband does not appeal the trial court's award of attorney's fees in the underlying action.

the issue of fees was a single paragraph and did not include findings of fact upon which it based its determination. *Id.* As a result, the court determined that the wife failed to establish that she was entitled to an award of fees on appeal. *Id.*

Similarly here, the record is devoid of what, if any, evidence was presented to the trial court. Wife's petition for attorney's fees on appeal merely states that she is without sufficient funds to pay an attorney to represent her in the appeal. She does not attach any exhibits to the petition that might provide the trial court with the ability to review her need for attorney's fees. *C.f. King v. King*, 694 S.W.2d 278, 279 (Mo. App. E.D. 1985) (motion was submitted to the court on the evidence adduced at the prior hearing, including the interrogatories and the deposition testimony of wife). Like *Alabach*, the trial court did not make a record of the hearing on Wife's petition for attorney's fees, nor is there any evidence in the record of other evidence before the trial court.

In its judgment, the trial court entered a short judgment finding that Wife's attorney's fee request of $8,000 was reasonable for the services required and acknowledged and overruled Husband's objection to attorney's fees on appeal. However, the judgment contains no findings of fact or reference to the factors set forth under § 452.355.

Wife argues that awarding attorney's fees on appeal was proper because Husband's appeal was filed only two months after the court's judgment granting Wife's counter-motion to modify, so the trial court was familiar with the evidence of the financial circumstances of the parties. However "the court is to consider the financial resources of the parties since the dissolution, even if the time period between the dissolution hearing and the appellate fee hearing is relatively short."

*Potts*, 303 S.W.3d at 197. Wife also argues that the trial court could base its determination on the evidence provided in the underlying action. However, requesting that the court take judicial notice of its own file is insufficient to satisfy the relevant factors to be considered under § 452.355.1. *See Davis v. Schmidt*, 210 S.W.3d 494, 518 (Mo. App. W.D. 2007).

In light of these facts and the reasoning set out above, we reverse and remand the issue of attorney's fees on appeal to the trial court for further proceedings. The court may take into account the financial history of the parties since the trial court's opinion, order, and judgment on or about April 19, 2016. We instruct the court to make findings in light of the relevant factors set forth in § 452.355.1 and with the principles set out in this opinion. *See Orth v. Orth*, 637 S.W.2d 201, 207 (Mo. App. E.D. 1982).

## Conclusion

We affirm the trial court's judgment denying Husband's motion to modify. We reverse the trial court's judgment granting Wife's counter-motion to modify, as well as its judgment awarding attorney's fees on appeal to Wife. We remand this matter for further proceedings consistent with this opinion.

Angela T. Quigless, P.J., and Robert G. Dowd, Jr., J., concur.