$100,000. The judgment is affirmed in all other respects.

All Concur.

■

**Donnie L. JACKSON,**
**Movant/Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. ED 104337**

Missouri Court of Appeals,
Eastern District,
DIVISION TWO.

Filed: August 15, 2017

Before Lisa P. Page, P.J., Roy L. Richter, J. and Philip M. Hess, J.

### ORDER

■

**L.R.S., Respondent,**

v.

**C.A.S., Appellant.**

**No. ED 104416**

Missouri Court of Appeals,
Eastern District,
DIVISION ONE.

Filed: August 15, 2017

Brian E. McGovern, Laura H. Stobie, for appellant.

Chris R. Wegner, Kimberly Ulrich Buchanan, for respondent.

ROBERT M. CLAYTON III, Presiding Judge

C.A.S. ("Husband") appeals from the trial court's Findings of Fact, Conclusions of Law, Order, Judgment and Decree of Dissolution ("Judgment") and subsequent judgment nunc pro tunc. Husband claims the trial court erred in issues related to the division of marital property, maintenance, and an award of attorney's fees on appeal. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.[1]

## I. BACKGROUND

### A. The Evidence Adduced at Trial

L.R.S. ("Wife") filed her petition for dissolution of marriage on September 16, 2014, and Husband filed a cross-petition for dissolution on October 7, 2014. A bench trial was conducted on October 5, October

---

1. We deny Husband's motion to dismiss L.R.S.'s Respondent's brief, or alternatively to strike portions of her brief, which was taken with the case.

6, October 30, and November 16, 2015, revealing the following facts.

Husband and Wife were married on October 9, 1992.[2] It is undisputed the parties enjoyed substantial financial resources throughout the marriage, and that they grew accustomed to a certain standard of living. Therefore, much of the evidence adduced at trial related to Husband's multiple sources of income and to the parties' spending patterns, which we summarize below.

Throughout the marriage, Husband was involved in the following business ventures that provided him with sources of income. First, Husband owned a fifty percent interest in W.C. Motor Company d/b/a West County Volvo ("West County Volvo"). Husband was also employed as the President of West County Volvo, and from this employment he earned a salary of $140,926.12 in 2014, along with many benefits. Second, Husband owned a twenty-four and one-half percent interest in Suntrup Ford, Inc. d/b/a Suntrup Ford Westport ("Suntrup Ford Westport") and was paid distributions based on his ownership interest, such distributions totaled $96,016.08 in the five years before trial. Third, Husband is the sole owner of Duke Reinsurance, LTD, which sells aftermarket financial products (warranties) to customers of West County Volvo. Between 2009 and 2014, Husband received a total of $598,233.40 from Duke Reinsurance, LTD. Fourth, Husband and Wife wholly owned two limited liability companies, 7196 LLC and 14400 Manchester, LLC ("the real estate entities"), which owned property that was leased to West County Volvo. 7196 LLC generated approximately $3,450 per month in income and 14400 Manchester, LLC generated approximately $3,000 per month. Finally, the trial court also found Husband received income from Heart Dealer Financial Services, LLC ("Heart Dealer Financial"), a third-party administrator of financial products for West County Volvo. In the five years prior to trial, Husband received a total of $169,269.64 from Heart Dealer Financial.

Calculations associated with the parties' joint tax returns indicate their gross income was $452,557 in 2014. Husband also received $113,204 from Duke Reinsurance, LTD in 2014 that was not included on Husband's tax return. When totaled together, then divided by twelve, the court found that Husband's gross income was $47,146.75 per month.

Early in the marriage, Wife was employed as a model, make-up artist, and in a sales position. However, Wife stopped working when the parties had children, and has not worked outside the residence since 1998. Wife received help caring for the parties' children and maintaining the marital residence; the couple employed an au pair when the children were young and then employed a cleaning lady and a part-time worker to do the family's laundry. Based on the report of a vocational expert, the trial court imputed income to Wife in the amount of $2,167 per month as her potential employment income.

Significant testimony was elicited regarding alleged marital and financial misconduct. During the marriage and prior to the parties' separation, Husband suffered from alcohol addiction, cocaine addiction, and engaged in sexual relationships with massage therapists. The foregoing misconduct all occurred while the minor children were still residing in the home, and Wife testified that Husband's actions affected

---

**2.** Two children were born of the marriage and were unemancipated at the time of trial. Because neither party has appealed issues relating to child custody or child support, all references to the children are only to provide context for the present appeal.

the children. In 2013, Husband went to Sober Living by the Sea, a rehabilitation facility for approximately thirty days. Husband has remained sober since he left the rehabilitation facility. Additionally, the trial court found Husband violated St. Louis County Local Court Rule 68 (effective May 1, 2010) ("Local Rule 68")[3] by spending a substantial amount of marital funds on his girlfriend, or elsewhere which he cannot account for, while the dissolution proceedings were pending.

Wife admitted to using cocaine with Husband because she felt it "was about the only way I could get to do anything with him." Wife also admitted that after Husband cancelled her credit card in December 2014, she removed approximately $11,000 from the marital bank account, transferred the money to her separate bank account, and spent it. However, the trial court found Wife's alleged financial misconduct was "dwarfed" by that of Husband.

## B. The Trial Court's Judgment and Other Relevant Procedural Posture

On February 18, 2016, the trial court issued its Judgment, and on March 10, 2016 the court issued a judgment nunc pro tunc, correcting mathematical or clerical errors.[4] In its Judgment, *inter alia*, the trial court ordered the following regarding the division of property and maintenance.

The trial court made findings as to the value of each of Husband's business interests, and found the total value of the marital estate to be $1,589,735.51. Based in part on Husband's misconduct and on the fact Husband was the party with greater earning capacity, the trial court determined a property division of sixty percent to Wife and forty percent to Husband was just, equitable, and appropriate. Husband was awarded: the entirety of his various business interests, valued at $1,133,500 total; the marital Morgan Stanley account with a balance of $34; and $12,325 of the equity from the sale of the marital residence. Wife was awarded the West County Volvo 401(K) plan valued at $66,302.51 and equity from the sale of the marital residence in the amount of $93,939.[5] Husband was then ordered to pay Wife a first equalization payment of $658,601 to reach the sixty-forty property division. Husband was also ordered to pay Wife a second equalization payment of $70,815 "to equalize assets in light of each party's use of marital funds in violation of Local Court Rule

---

3. All further references to Local Rule 68 are to the version effective May 1, 2010.

4. The judgment nunc pro tunc corrected a mathematical error regarding calculation of the maintenance award, a mathematical error as to the value of an equalization payment Husband was ordered to pay Wife, and two additional typographical errors. Husband attached both the trial court's February 18 Judgment and the March 10 judgment nunc pro tunc to his notice of appeal. Because the judgment nunc pro tunc only corrected mathematical or clerical errors, did not make any substantive changes to the Judgment, and there is no issue regarding whether Husband properly appealed either judgment, we incorporate the changes made in the judgment

nunc pro tunc into the Judgment, and will refer to them collectively as the "Judgment."

5. The amounts stated above for each party's portion of the proceeds from the sale of the marital residence reflect what each party actually received. Although Wife was awarded sixty percent of the equity from the sale of the marital residence, totaling $233,939, Wife's attorney's fees and advances were subtracted from that amount prior to any proceeds being disbursed to her. Similarly, Husband was awarded forty percent of the home equity, which amounted to $155,960; however, attorney's fees and litigation expenses were subtracted from that amount prior to any proceeds being distributed to him.

68." [6]

The trial court also awarded Husband as his separate property, a BMW 401(K) plan in the amount of approximately $2,000 and his interest in a family trust, which holds assets comprised of real estate and cash, in the approximate value of $5,500,000. As to the marital debt, Husband was ordered to pay ninety percent of the parties' tax debt, while Wife was ordered to pay the remaining ten percent. Husband was also ordered to bear responsibility for repaying a promissory note Husband owes to his brother.

The proceeds from the sale of the marital residence were first used to pay $100,000 to each party's attorney's fees. Then, the court split the remaining home equity according to the sixty-forty property division, deducted all litigation expenses from Husband's side and Wife's additional attorney's fees and advances from her side, and distributed the remainder to Husband and Wife in the amounts previously stated.

Husband was ordered to pay Wife $14,617 per month in modifiable maintenance beginning on December 1, 2015. In support of its award of maintenance, the trial court listed with particularity each of the parties' income and reasonable expenses.[7] In lieu of retroactive maintenance, Husband was ordered to pay Wife's outstanding credit card debt in an amount not to exceed $57,556.12. Additionally, Hus-

band was ordered to pay for the children's schooling, and to pay Wife $500 in child support for each month the youngest child is home from college.

On March 18, 2016, Husband filed a motion to amend the Judgment, or alternatively, for a new trial, which was subsequently denied by the trial court. Husband then filed his notice of appeal on May 20, 2016.

On September 22, 2016, Wife filed a motion requesting attorney's fees on appeal. Husband filed written objections to the motion for attorney's fees on October 10, 2016, and the trial court held a hearing off the record the next day. The trial court subsequently granted Wife's motion and ordered Husband to pay $25,000 of Wife's attorney's fees on appeal. Husband appeals.

## II. DISCUSSION

Husband raises eight points on appeal, which we will discuss in the following order. In his eighth point on appeal, Husband argues the trial court erred in ordering him to pay Wife an equalization payment of $80,100 as part of the division of marital property. Then, in Husband's first through sixth points on appeal, he asserts the trial court erred in ordering Husband to pay Wife $14,617 in monthly maintenance. And in his seventh point on appeal, Husband contends the trial court

---

**6.** In calculating the second equalization payment, the court added the values of the marital Morgan Stanley account ($99,211) and the Ameriprise life insurance policy ($29,814), both of which Husband dissipated during the pendency of the litigation in violation of Local Rule 68.3, and "awarded" that amount to Husband as if he had not already spent these funds. From this amount, the court subtracted the $11,000 that Wife spent in violation of Local Rule 68.3, for a total of $118,025. The court then ordered Husband to pay Wife sixty percent of this amount to account for what Wife would have been entitled to as part of

her portion of the property division had Husband not spent the funds, as the $70,815 second cash equalization payment. These amounts were not included in the court's valuation of the marital estate.

**7.** To avoid unnecessary repetition, the trial court's calculations supporting the maintenance award, along with other additional facts and the trial court's specific findings of fact and conclusions of law, will be set out in our analysis in Section II. of this opinion.

erred in ordering him to pay Wife $25,000 for attorney's fees on appeal.

## A. General Standard of Review

■ As with any court-tried case, our review of a dissolution of marriage action is guided by the standards set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Alabach v. Alabach*, 478 S.W.3d 511, 513 (Mo. App. E.D. 2015) ("*Alabach I*"). Accordingly, the dissolution judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.*

■ Matters such as the weight of evidence, the credibility of witnesses, and the resolution of conflicting evidence are for the trial court to resolve and will not be reviewed by this Court. *Hollida v. Hollida*, 131 S.W.3d 911, 915 (Mo. App. S.D. 2004).

> Appellate courts defer to the trial court on factual issues because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record. The appellate court's role is not to re-evaluate testimony through its own perspective.

*In re Estate of L.G.T.*, 442 S.W.3d 96, 100 (Mo. App. S.D. 2014) (quoting *White v. Director of Revenue*, 321 S.W.3d 298, 308-09 (Mo. banc 2010)) (internal citations and emphasis omitted). The trial court is free to believe all, none, or part of a witness's testimony, and may disbelieve even uncontradicted testimony. *Hollida*, 131 S.W.3d at 915-16. Additionally, when the trial court has made no specific findings on a factual issue, such findings are interpreted as having been found in accordance with the trial court's judgment. *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014); Rule 73.01(c).[8]

■ Moreover, in reviewing a court-tried case, an appellate court is primarily concerned with the correctness of the trial court's decision rather than the route taken to reach it. *O'Gorman & Sandroni, P.C. v. Dodson*, 478 S.W.3d 539, 543 (Mo. App. E.D. 2015). "Therefore, we are obliged to affirm if we determine that the trial court reached the correct result, regardless of whether the trial court's proffered reasons are wrong or insufficient." *Id.*

## B. Whether the Trial Court Erred in Ordering Husband to Pay Wife the Second Equalization Payment

In his eighth point on appeal, which we discuss first for ease of analysis and to provide relevant background, Husband argues the trial court erred in ordering him to pay Wife the second equalization payment of $80,100 as part of the division of marital property. We disagree.

### 1. Standard of Review and General Law Relating to Property Division

■ The trial court is vested with broad discretion in dividing marital property. *Coleman v. Coleman*, 318 S.W.3d 715, 719 (Mo. App. E.D. 2010); *Woodard v. Woodard*, 201 S.W.3d 557, 561 (Mo. App. E.D. 2006). "A division of marital property need not be an equal division, but must only be fair and equitable given the circumstances of the case." *Workman v. Workman*, 293 S.W.3d 89, 96 (Mo. App. E.D. 2009). The trial court's division of property will be disturbed only if the division is so heavily weighted in favor of one party as to amount to an abuse of discretion. *Rallo v. Rallo*, 477 S.W.3d 29, 38 (Mo.

8. All further references to Rules are to Missouri Supreme Court Rules (2017).

App. E.D. 2015); *Woodard*, 201 S.W.3d at 561. Further, we presume the division of property is correct, and the party challenging the property division bears the burden of overcoming the presumption. *Woodard*, 201 S.W.3d at 561. Even if the evidence could have supported a different division, we defer to the trial court's findings, because it is in the best position to determine the sincerity and credibility of witnesses, weigh conflicting evidence, and judge other trial intangibles not revealed by the transcript. *Hatchette v. Hatchette*, 57 S.W.3d 884, 890 (Mo. App. W.D. 2001).

In determining a fair and equitable division of marital property, the trial court is statutorily required to consider, among other factors, "[t]he conduct of the parties during the marriage." *Lindsey v. Lindsey*, 336 S.W.3d 487, 496 (Mo. App. E.D. 2011) (quoting section 452.330.1(4) RSMo 2000[9]); *see also Franklin v. Franklin*, 213 S.W.3d 218, 226 (Mo. App. E.D. 2007). The trial court may order an unequal division of property based upon a party's misconduct when such misconduct changes the balance so that the other spouse was burdened with a greater share of the partnership load. *Lindsey*, 336 S.W.3d at 496. Misconduct that causes or contributes to the breakup of a marriage is considered an added burden. *Id.* The courts consider misconduct in dividing marital property as an attempt to recognize "that significant misconduct, of whatever kind, negatively affects the marital relationship and places burdens, even if not economic burdens, on the other party to the relationship." *Hatchette*, 57 S.W.3d at 890.

## 2. Husband's Arguments, the Trial Court's Findings, and Analysis

Before delving into the merits of Husband's claim, we find it necessary to clarify Husband's arguments and the scope of our analysis. Husband's eighth point relied on reads, "[t]he [t]rial [c]ourt erred in ordering [Husband] to pay $80,100 to [Wife] as a second equalization payment as the [t]rial [c]ourt's order was an abuse of discretion as [Wife] spent indiscriminately during the pendency of the case, thereby penalizing [Husband] for spending marital funds was an abuse of discretion." Despite limiting his point relied on to the propriety of the equalization payment, Husband further contends in the argument portion of his brief that the trial court erred in ordering Husband to pay the equalization payment *along with* requiring him to pay a portion of Wife's credit card debt.[10] However, issues raised only in the argument portion of a parties' brief are not preserved for appellate review. *Hollida*, 131 S.W.3d at 916 n.6. Thus, we will limit our analysis on this point to determining whether the trial court erred in ordering Husband to pay Wife the second equalization payment, and decline to address whether the trial court erred in ordering Husband to pay Wife's credit card debt.

We also find it important to note an ambiguity in Husband's claim. As previously noted, Husband's eighth point relied on challenges the trial court's action in "ordering [Husband] to pay *$80,100* to [Wife] as a *second equalization payment*." (emphasis added). However, our review of the record reveals the second equalization payment awarded to Wife was in the

---

9. All further statutory references are to RSMo 2000.

10. The trial court's order that Husband shall repay Wife's credit card debt in lieu of retro-active maintenance was associated with marital support being involuntarily and unexpectedly terminated during the pendency of the parties' dissolution.

amount of $70,815.[11] This payment was awarded "to equalize assets in light of each party's use of marital funds in violation of Local Court Rule 68." From what we can glean from the record and the Judgment, the $80,100 figure comprises the portion of the value of Duke Reinsurance, LTD Husband shall pay Wife as part of the first equalization payment, which was ordered to reach the sixty-forty property division between the parties. Because Husband refers to the "second equalization payment" in his point relied on, and because this second equalization payment was ordered by the trial court to account for the violations of Local Rule 68 (which Husband's argument in this point on appeal relates to), we review Husband's argument as if it properly challenges the propriety of the second equalization payment of $70,815.

█ Having noted the parameters of our analysis, we proceed to Husband's argument on this point. Husband asserts the trial court abused its discretion in awarding Wife an equalization payment based on Husband's financial misconduct during the pendency of the dissolution proceedings. Husband maintains he was unfairly penalized for his misconduct while Wife was found not to have committed financial misconduct based on her credit card spending.

### a. Local Rule 68 as it Relates to Husband's Claim

Relevant to our discussion of this point is Local Rule 68.3, which provides in part:

(F) In any dissolution, ... neither party shall close or borrow against any bank or investment account, certificate of deposit or IRA or retirement account, nor shall either party dissipate, sell, remove, assign, transfer, dispose of, lend, mortgage, or encumber any property of a party, real or personal, except in the ordinary course of business or for the necessary expenses of the parties' family under the circumstances unless ordered by the [c]ourt or unless consented to in writing by both parties.

(G) In any dissolution, ... neither party shall incur extraordinary credit card or other debt except in the ordinary course of business or for the necessary expenses of the parties' family under the circumstances unless ordered by the [c]ourt or unless consented to in writing by both parties.

Local Rule 68.3(2)(F) and (G). Pursuant to the rule, the trial court has authority to find the violating party in contempt and order fines or sanctions based upon the violation. Local Rule 68.3(4).

During the pendency of the proceedings in the lower court, Wife filed a motion for contempt, alleging Husband behaved contemptuously in removing money from the marital Morgan Stanley checking account, terminating an Ameriprise life insurance policy, and dissipating said funds. The trial court addressed Wife's motion for contempt in its Judgment, entering findings of fact and conclusions of law on the matter. The court found that although the Morgan Stanley account held a balance of $99,320.62 at the time Wife filed her petition for dissolution in September 2014, Husband credibly testified at trial the current balance of that account was $34.00. Moreover, Husband received approximately $29,814.19 in cash from terminating the life insurance policy.

The trial court found, "[w]hile some of Husband's spending from these sums went to legitimate litigation expenses, mortgage payments, tuition payments or document-

11. *See* footnote 6 regarding the trial court's calculation of the second equalization payment.

ed credit card payments, the [c]ourt finds that Husband spent considerable amounts of marital cash/assets on his girlfriend (furniture, clothing, nails, gas for her car, jewelry) or elsewhere, which he cannot otherwise account for, in contravention of [Local] Rule 68." Further, "Wife offered credible evidence to show that Husband denied Wife access to the [Morgan Stanley] account, hid some spending by writing cash checks to himself, without further ability to account for same, suggesting that he was acting with ill-intent or at least with a purpose to deprive Wife of some of the parties' marital assets." Although the court concluded Husband violated Local Rule 68.3, at least with some of his expenditures, the court exercised its discretion to find Husband was not in contempt and decided to recapture the marital assets under the division of property instead.

Based on the trial court's actions in concluding Husband violated Local Rule 68.3 but not holding him in contempt, we consider the court's findings and conclusions relating to Husband's financial misconduct in violation of the local rule as part the trial court's larger consideration of "[t]he conduct of the parties during the marriage" as required by section 452.330.1(4). *See Lindsey*, 336 S.W.3d at 496; *Franklin*, 213 S.W.3d at 226.

### b. Additional Trial Court Findings on Misconduct

In addition to the court's discussion of Local Rule 68.3 and Wife's motion for contempt, the Judgment contains extensive findings and conclusions regarding each party's misconduct as it relates to the division of property. We recount portions of those findings below.

194. The [c]ourt finds that Husband engaged in a pattern of misconduct throughout the marriage: alcohol abuse, cocaine abuse, sexual interactions with massage therapists and a relationship with [his girlfriend]. The [c]ourt further finds that Husband misappropriated and misused marital assets in violation of St. Louis County Local Court Rule 68.

195. The [c]ourt finds that there is some evidence in the record supporting a finding that Husband's alcohol and cocaine abuse, along with the impaired behaviors which this abuse caused (including affairs with massage therapists) placed additional burdens on Wife, because she had to care for him several days per week, when he was impaired, that these actions took place over many months, during a time when the children could observe Husband's conduct and that such behavior caused considerable emotional distress to Wife.

196. The [c]ourt finds there was some evidence in the record to support a finding that Husband's relationship with [his girlfriend] placed additional burdens on Wife, as Husband spent marital money on dates with her and buying approximately $7,600 of furniture for [his girlfriend's] already furnished apartment.

197. The [c]ourt additionally finds that Wife's removal of $11,000 from the marital bank account as outlined above constituted some misconduct. However, the [c]ourt places a much greater weight on Husband's financial and marital misconduct.

198. In light of the foregoing findings, the [c]ourt finds that an unequal division of assets is appropriate, and that Wife should receive a

greater division of marital assets (60%) than Husband (40%).

The Judgment and an attached exhibit demonstrate the trial court took Wife's misconduct of using $11,000 of marital assets into consideration when calculating the second equalization payment. Finally, the trial court denied Husband's request that the court find Wife committed misconduct by spending over $60,000 on credit cards from December 2014 through November 2015, after Wife no longer had access to the parties' joint checking account and Husband discontinued paying her credit card bills. In denying such request, the trial court reasoned:

> [B]oth parties' patterns of spending on credit cards and with cash was longstanding and in keeping with the parties' luxurious lifestyle established during the marriage, created by Husband's considerable income. While the [c]ourt cannot condone these patterns of spending, the [c]ourt declines to find that Wife has committed financial misconduct by spending money in the same way she previously spent money for the past twenty years.

### c. Analysis of Husband's Claim

The trial court's findings relating to Wife's alleged misconduct demonstrates fatal flaws in Husband's argument on this point. First, the trial court considered Wife's use of $11,000 of marital assets in awarding the second equalization payment, and reduced the payment by that amount. Second, the trial court explicitly found Wife's credit card spending was consistent with her ordinary course of business throughout the past twenty years of the parties' marriage, and thus was not "extraordinary" credit card debt as would violate Local Rule 68.3(2)(G). As opposed to the more than one-half of $129,025 in marital assets that Husband spent on inappropriate expenses or which he cannot account for, the court found Wife spent the $57,556 on credit cards and $11,000 from the marital bank account for discretionary expenses such as food, clothing, and household items for her and the parties' youngest child who was still living at home after Husband stopped providing her with monthly marital support and discontinued paying her credit card bills. It is clear from the court's findings on this matter that it properly considered the special circumstances of the parties' marriage and their "luxurious lifestyle" in determining whether Wife's spending violated the local rule. See Local Rule 68.3(2)(G).

Moreover, we find the trial court correctly considered the conduct of the parties during the marriage when dividing the marital property. See section 452.330.1(4); see also Lindsey, 336 S.W.3d at 496; Franklin, 213 S.W.3d at 226. The court ordered the sixty-forty division of property based on Husband's misconduct (the alcohol abuse, cocaine abuse, and affairs), which it found burdened Wife with a greater share of the partnership load. See Lindsey, 336 S.W.3d at 496; Hatchette, 57 S.W.3d at 890. Additionally, there was evidence adduced at trial that Husband's relationship with his girlfriend—which began during the marriage and resulted in a pregnancy while the parties were still married—contributed to the breakup of the marriage. See Lindsey, 336 S.W.3d at 496 (misconduct that contributes to the breakup of a marriage is considered an added burden).

Based on the foregoing, the trial court's sixty-forty division of property was fair and equitable in light of Husband's misconduct during the marriage. See Lindsey, 336 S.W.3d at 496; Hatchette, 57 S.W.3d at 890. Further, Husband has failed to establish the trial court's division was so heavily weighted in favor of Wife so as to amount to an abuse of discretion. See Rallo, 477

S.W.3d at 38; *Woodard*, 201 S.W.3d at 561. Point eight is denied.

## C. Husband's Points on Appeal Relating to Maintenance

We now turn our attention to Husband's first through sixth points on appeal, in which he challenges the trial court's award of maintenance. In Husband's first, second, and third points on appeal, he argues the trial court erred in ordering him to pay Wife maintenance. Then, in his fourth, fifth, and sixth points on appeal, Husband contends the trial court erred in determining the amount of Wife's monthly maintenance award.

### 1. Standard of Review and General Law Relating to Maintenance

The trial court is vested with broad discretion in awarding maintenance. *Coleman*, 318 S.W.3d at 719; *Woodard*, 201 S.W.3d at 561. Thus, our Court will not reverse the trial court's order absent an abuse of discretion, and we defer to the trial court even if the evidence could support a different conclusion. *Woodard*, 201 S.W.3d at 561. "The trial court abuses its discretion only when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *Coleman*, 318 S.W.3d at 720 (quotations omitted). If reasonable minds could differ about the propriety of the trial court's decision, there is no abuse of discretion. *French v. French*, 365 S.W.3d 285, 291 (Mo. App. S.D. 2012).

The trial court may award maintenance only upon finding the spouse seeking maintenance, (1) lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs; and (2) is unable to support herself through appropriate employment.

Section 452.335.1; *Valentine v. Valentine*, 400 S.W.3d 14, 20-21 (Mo. App. E.D. 2013). In applying this two-part standard, the trial court is first required to determine the reasonable needs of the spouse seeking maintenance. *Schubert v. Schubert*, 366 S.W.3d 55, 63 (Mo. App. E.D. 2012). Then, the court must consider whether the party "lacks sufficient property, including marital property apportioned to her, to provide for these reasonable needs, or is unable to support herself through appropriate employment." *Valentine*, 400 S.W.3d at 21. The spouse requesting maintenance has the burden of establishing these two threshold requirements. *Comninellis v. Comninellis*, 147 S.W.3d 102, 106 (Mo. App. W.D. 2004).

Upon finding a spouse has satisfied the threshold requirements for maintenance, the trial court shall then award maintenance in an amount it finds appropriate based on all relevant factors. *Lindsey*, 336 S.W.3d at 497; section 452.335.2; *see also Orange v. White*, 502 S.W.3d 773, 777 (Mo. App. E.D. 2016) (listing statutory factors the trial court may consider). In determining the amount of the maintenance award, the trial court should also balance the reasonable needs of the spouse seeking maintenance with the paying spouse's ability to pay. *DiRusso v. DiRusso*, 350 S.W.3d 464, 468 (Mo. App. S.D. 2011); *Dowell v. Dowell*, 203 S.W.3d 271, 285 (Mo. App. W.D. 2006).

### 2. Whether the Trial Court Erred in Determining Wife's Reasonable Needs

In his second and third points on appeal, which we address together and initially for ease of analysis, Husband contends the trial court erred and abused its discretion in determining Wife's reasonable needs. In Husband's second point on appeal, he argues more generally the trial court failed to consider whether Wife's stated expenses are actually "reasonable needs." Then, in

his third point on appeal, Husband specifically asserts Wife's housing-related expenses, automobile expenses, and credit card expenses are not supported by substantial evidence.

### a. Husband's Second Point on Appeal

 A trial court's maintenance award shall be limited to the reasonable needs of the spouse seeking maintenance; however, the spouse's reasonable needs need not be limited to the spouse's actual expenses at the time of dissolution. *Valentine*, 400 S.W.3d at 21; *Angel v. Angel*, 356 S.W.3d 357, 362 (Mo. App. W.D. 2011); *Comninellis*, 147 S.W.3d at 106. Rather, the trial court must determine which of the recipient spouse's expenses constitute her reasonable needs. *Barth v. Barth*, 372 S.W.3d 496, 504 (Mo. App. W.D. 2012) (citing *Nichols v. Nichols*, 14 S.W.3d 630, 636 (Mo. App. E.D. 2000)). A party's reasonable needs are relative, and thus, the court may consider the marital standard of living in determining whether a spouse's claimed expenses are reasonable. *Angel*, 356 S.W.3d at 362; *Comninellis*, 147 S.W.3d at 106. "In a marriage of lengthy duration where one spouse has foregone career development, the marital standard of living may serve as an important guide in computing the spouse's reasonable needs. In a very practical sense it is frequently the best evidence of what the parties have together determined their reasonable needs to be." *Comninellis*, 147 S.W.3d at 106 (quotations omitted); *see also Angel*, 356 S.W.3d at 362; *Barton v. Barton*, 157 S.W.3d 762, 766 (Mo. App. E.D. 2005).

 To compute a spouse's reasonable needs, the trial court will receive each party's statement of income and expenses, which a party may complete in light of their desired standard of living. *See Hammer v. Hammer*, 139 S.W.3d 239, 245 (Mo. App. W.D. 2004). Then at trial, the court will hear and consider conflicting evidence regarding each spouse's income and expenses. *See id.* Based on such evidence, the trial court decides what expenses may appropriately be considered the spouse's reasonable needs. *See id.* "It is seldom a matter of mathematical precision, and expense submissions are not required to be based on strict necessity." *Id.*

 In this case, Wife submitted statements of her income and expenses, with the most recent statement including monthly expenses totaling $19,105. Additionally, the court heard testimony regarding Wife's claimed expenses, her spending patterns established during the parties' marriage, and their standard of living. The court also heard Husband's testimony disputing some of Wife's claimed expenses. Based on the conflicting evidence before it, the trial court decided the appropriate amount for Wife's reasonable monthly expenses was $16,784. In support of this figure, the trial court prepared Exhibit E containing a breakdown of the components of Wife's reasonable monthly expenses. The trial court also made the following explicit findings from the credible evidence and reasonable inferences therefrom:

a. .... The [c]ourt expects that Wife's reasonable monthly housing needs to maintain her current standard of living can be met at $3,000.00 per month, as both children are now in college and she will not need the full square footage of her current home (she requested her current mortgage amount of $4,000.00).

b. Wife's automobile expenses, which she has always had covered by the dealership, are now estimated at $1,130.00 per month, which includes insurance, gas, maintenance and the monthly auto loan. Currently, Wife drives a newer model Volvo SUV, so

the [c]ourt makes its findings accordingly, based on Wife's credible testimony, Husband's testimony that "$600 per month is pretty reasonable" for this expense, and the reasonable inferences therefrom.

c. Wife was not able to provide the [c]ourt with any estimated costs for her health insurance .... The [c]ourt finds that $700 per month is a reasonable estimate for Wife's monthly health insurance and accident insurance [based in part on Husband's self-employment health care tax deduction] ....

d. The [c]ourt has reduced certain of Wife's claimed expenses, as reflected in Ex. E. The [c]ourt finds that the reduced amounts are more reflective of what Wife's true reasonable needs are ....

e. The [c]ourt permits certain of Wife's expenses, such as "books" and "gifts," as reflected in Ex. E. .... [T]he [c]ourt finds that these are reasonable expenses for Wife to expend, when she has children and friends, who may require the occasional celebratory gift, and when she may want to read books, magazines or newspapers during a month. The [c]ourt finds evidence of such expenditures in Joint Exhibit #24, Wife's Citibank card account, containing purchases of this type at Barnes and Noble.

f. It is the [c]ourt's intention that the maintenance figure should incorporate the majority of the taxes due thereon; the [c]ourt considers that maintenance is taxable to Wife and deductible to Husband ....

g. Wife's household expenses are estimated using the costs of living at the marital residence .... Both parties provided those figures to the [c]ourt as a basis for their current living expenses. The [c]ourt uses those listed household expenses in calculating Wife's reasonable needs, because that is the standard of living which she came to enjoy during her marriage to Husband. This includes the household cleaning and laundry expenses, which Wife has traditionally enjoyed during her marriage. The same is true for her gym memberships, her massages and her day spa expenses. Both parties have enjoyed, and continue to enjoy, these luxury services throughout their marriage. As to the estimates for Wife's property taxes and condominium fees, the [c]ourt finds that Wife's current expenses in these regards are fair estimates for determining future expenses and her future standard of living.

h. Wife requested $350 per month for massage therapy and testified that she receives massages at least weekly. She has received these massages for years, due to back pain. Husband has never previously complained of these expenses and, further, he receives his own massages.

i. The parties have a Labrador retriever; the [c]ourt finds the pet expenses to be reasonable for this family pet.

Based on our review of the record and the preceding trial court findings, we conclude the court properly used the parties' standard of living as a guide to computing Wife's reasonable needs. *See Comninellis*, 147 S.W.3d at 106; *see also Angel*, 356 S.W.3d at 362; *Barton*, 157 S.W.3d at 766. Although the trial court used the marital standard of living as evidence of Wife's expenses, it did not give sole or undue consideration to the standard of living in calculating Wife's reasonable needs and reduced Wife's claimed expenses to the

extent such items were unjustifiable. *See Comninellis*, 147 S.W.3d at 106, 107. It is clear the trial court considered any excessiveness in Wife's claimed expenses based on the fact the court actually awarded Wife over $4,000 less than the amount she requested for maintenance. *See id.* at 108. Moreover, the court's consideration of any excessive or unjustifiable amounts is also demonstrated by the fact that it reduced the amounts awarded for categories such as food, clothing, and recreation, and by its finding such "reduced amounts are more reflective of what Wife's true reasonable needs are." Based on the foregoing, the trial court properly determined which of Wife's stated expenses were reasonable needs. *See Barth*, 372 S.W.3d at 504. Point two is denied.

#### b. Husband's Third Point on Appeal

As previously stated, Husband next argues Wife's housing-related expenses, automobile expenses, and credit card expenses are not supported by substantial evidence. In determining whether a trial court's judgment is supported by substantial evidence, an appellate court views the evidence in the light most favorable to the judgment, disregards all contrary evidence, and defers to the trial court's credibility determinations. *Ivie*, 439 S.W.3d at 200. "Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the [trial] court's judgment." *Id.* at 199. We will overturn a trial court's judgment under this standard of review only if we have a firm belief that the judgment is wrong. *Hopkins v. Hopkins*, 449 S.W.3d 793, 802 (Mo. App. W.D. 2014).

Specifically in this point, Husband challenges the following amounts of Wife's reasonable expenses: $3,000 per month for rent or mortgage; $1,034 per month for utilities; $1,355 per month for other housing-related expenses; $600 per month for automobile loan payments; and $800 per month for credit card payments. However, contrary to Husband's assertion, we find the record contains substantial evidence to support each of these expenses. As a starting point, we note that, "[a] spouse's statement of income and expenses may serve as substantial evidence of the spouse's reasonable expenses." *Lindsey*, 336 S.W.3d at 498. Here, Wife's statement of income and expenses included figures above or equal to the trial court's award as to each of these expense categories. Specifically, Wife's most recent income and expense statement listed her monthly expenses for rent or mortgage as $3,000, credit card payments as $800, and her other housing-related expenses totaled $1,355. Wife also testified at trial the amounts she listed for each of her expenses were a "fair estimate" of what she spent per month on each of those items. Thus, the trial court's award as to these amounts was supported by substantial evidence. *See id.*; *see also Ivie*, 439 S.W.3d at 199.

Additionally, the amount Wife was awarded for her automobile loan payment was supported by Husband's testimony. Although Wife claimed her expenses for an automobile loan payment to be $650 based on the vehicle she was driving at the time of trial, Husband testified a fair and reasonable finance value for Wife's vehicle would be approximately $600 per month. In light of Husband's testimony, we are unable to find the amount awarded for Wife's automobile loan payments was not supported by substantial evidence. *See Ivie*, 439 S.W.3d at 199.

Finally, the amounts awarded for Wife's utility expenses are supported by the parties' statements of income and expenses and Wife's testimony at trial. Although varying slightly, both parties

submitted utility expenses based on the approximate costs of living at the marital residence. The amounts awarded for Wife's utilities are based on either Husband's or Wife's estimate of these expenses. The court did not err in considering these estimates when determining Wife's reasonable needs for utilities. *See Linton v. Linton*, 117 S.W.3d 198, 205 (Mo. App. S.D. 2003). The numbers for the marital residence constituted substantial evidence upon which the trial court could have determined Wife's utility expenses, and any other evidence Husband has pointed to is contrary evidence that we disregard pursuant to our standard of review. *See Ivie*, 439 S.W.3d at 199-200.

Thus, Wife's housing-related expenses, automobile expenses, and credit card expenses are each supported by substantial evidence. Point three is denied.

### 3. Wife's Ability to Provide for Her Reasonable Needs through Marital Property Apportioned to Her

We now turn to Husband's first point on appeal, in which he argues the trial court erred in finding Wife lacked sufficient property to provide for her reasonable needs. Husband asserts: "the only income considered by the trial court was the sum the trial court found [Wife] could earn by working outside of the home;" the court failed to consider the marital property apportioned to Wife in determining her income for purposes of maintenance; and thus, the calculation of her income was erroneous.

In awarding maintenance, the trial court is required to consider the marital property awarded to the spouse seeking maintenance. *Woodard*, 201 S.W.3d at 563 (citing section 452.335). Specifically, the trial court shall evaluate whether the recipient spouse's property is sufficient to

provide for her reasonable needs by, *inter alia*, considering income the spouse can earn on marital property awarded to her in the dissolution. *Lee v. Lee*, 117 S.W.3d 693, 696 (Mo. App. E.D. 2003) (citing *Hill v. Hill*, 53 S.W.3d 114, 116 (Mo. banc 2001)); *Breihan v. Breihan*, 73 S.W.3d 771, 777 (Mo. App. E.D. 2002); *Jung v. Jung*, 886 S.W.2d 737, 740 (Mo. App. E.D. 1994). The trial court commits reversible error if it fails to consider the recipient spouse's marital property award, including the reasonable expectation of income from investing the award. *Schubert*, 366 S.W.3d at 65; *Woodard*, 201 S.W.3d at 563.

In *Woodard*, the former husband appealed the trial court's award of maintenance to former wife, arguing the trial court erred in determining the wife's yearly income for purposes of maintenance. 201 S.W.3d at 563. The husband maintained the court failed to consider a cash equalization payment he was required to pay the wife as part of the marital property division, and that the cash payment was an investable asset. *Id.* This Court reversed and remanded, as we found the record was unclear as to whether the trial court considered the cash equalization payment in its calculation of the maintenance award. *Id.* Because the judgment was unclear as to whether the cash payment was considered in calculating the wife's income, did not provide for a method of payment, and was uncertain as to when or if she would receive payment, we found remand was required for the court to determine precisely how the cash payment would affect the wife's income, and accordingly, the maintenance award. *Id.* at 562 n.2, 563.

In this case, the trial court concluded Wife's reasonable needs amounted to $16,784 per month. Based upon the testimony of a vocational expert, the trial court imputed to Wife $2,167 per month as her potential employment income. By deduct-

ing that amount from Wife's reasonable needs, the court ordered Husband to pay Wife monthly maintenance in the amount of $14,617. Thus, the potential employment income was the only income considered by the trial court in calculating the maintenance award. We find the court erred, as it should have also considered how the marital property apportioned to Wife affected her income; and thus, Wife's ability to meet her reasonable needs. *See id.*; *see also Schubert*, 366 S.W.3d at 65.

The trial court awarded Wife sixty percent of the marital assets, consisting of a West County Volvo 401(K) plan valued at $66,302.51, equity from the sale of the marital residence valued at $93,939, and two cash equalization payments of $658,601 and $70,815, all totaling $889,657.51. The Judgment is unclear as to whether the court considered these cash payments or potential income she could earn by investing her portion of the marital assets in awarding maintenance. Further, our review of the record has revealed little evidence regarding Wife's reasonable expectation of income based on investment of the marital property awarded to her. While the court directed Husband to pay Wife her share of the marital property via "cash equalization payments," there is no specific indication as to how or in what form Husband would transfer these funds to Wife.

Because the record is unclear as to how the marital property apportioned to Wife will affect Wife's income and in turn her maintenance award, we reverse and remand for further proceedings so the trial court may develop the record and further consider how and when Wife is to receive the entirety of her property award and to what extent, if any, the award affects her income for purposes of maintenance. *See id.* Upon further consideration, the trial court may recalculate the maintenance

award so as to reflect Wife's ability to meet her reasonable needs in light of her portion of the marital assets. In so holding, we recognize the possibility that Wife's property award may have little or no impact on her income, as Wife testified she wished to buy a home to live in with her dog and the parties' two children when they are home from college. But the record reveals Wife was awarded $3,000 per month in maintenance to pay for a mortgage, which if applied entirely to the servicing of debt, could support a significant mortgage for a home. Therefore, the record is also unclear as to whether Wife intended to purchase a home with the entirety of her marital property award. As we are remanding for the trial court to further consider the impact of Wife's marital property award on her income for purposes of maintenance, the trial court may also consider Wife's intent to use any or all of the marital property awarded to her to purchase a home and make the necessary findings and adjustments to the maintenance award accordingly. Point one is granted.

## 4. Whether the Trial Court Erred in Determining the Amount of the Maintenance Award

In Husband's fourth, fifth, and sixth points on appeal, Husband contends the trial court erred in determining the amount of Wife's monthly maintenance award.

### a. Whether Husband is Able to Support Himself and Pay the Maintenance Award

In his fourth point on appeal, Husband contends the trial court abused its discretion in determining the amount of Wife's monthly maintenance award, because the trial court's findings regarding Husband's reasonable needs are not supported by substantial evidence. Husband further ar-

194

gues in this point that the maintenance award, when combined with other orders in the Judgment, leaves him unable to support himself.

### i. Whether the Maintenance Award is Supported by Substantial Evidence

 Husband argues the trial court's findings regarding his reasonable needs are not supported by substantial evidence because the trial court "disregarded" his Third Amended Statement of Income and Expenses.

As previously stated, in reviewing a substantial evidence challenge, we view the evidence in the light most favorable to the judgment, disregard all contrary evidence, and defer to the trial court's credibility determinations. *Id.* at 200. "Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the [trial] court's judgment." *Id.* at 199. Further, we will overturn a trial court's judgment under this standard of review only if we have a firm belief that the judgment is wrong. *Hopkins*, 449 S.W.3d at 802.

In rendering its findings of fact as to Husband's reasonable needs, the trial court found the amounts listed in Husband's statements of income and expenses were not credible. Specifically, the court stated:

> The [c]ourt is required to make findings regarding Husband's reasonable needs, but the [c]ourt confronts a situation where many of the living or household expenses listed by Husband for his everyday needs ... are not borne out by his spending patterns on his credit cards and with his cash .... Therefore, the [c]ourt makes such findings on Husband's expenses which appear to be borne out by the credible evidence and the reasonable inferences therefrom.[ ]

The [c]ourt has prepared its own exhibit F, attached hereto and incorporated herein, which lists Husband's reasonable expenses in detail. The [c]ourt finds that Husband's reasonable monthly expenses, including the loan repayment to his [f]ather, are $9,342.00. The [c]ourt notes that many routine expenses that most people have to bear themselves, such as cell phones and the many costs associated with owning automobiles, are zeroed out for Husband, because the dealership pays these expenses and they do not come out of Husband's pocket. This will not be the case for Wife, after their marriage is dissolved.

Our review of the record makes it clear the trial court considered all the credible exhibits, testimony, and other evidence presented to it in rendering its Judgment. In determining Husband's reasonable expenses, the trial court had before it, *inter alia*, four income and expense statements submitted by Husband, substantial testimony from Husband regarding his expenditures, and numerous pages of credit card and bank account statements reflecting his expenses. Additionally, Wife's counsel elicited testimony from Husband regarding the changes and increases between each of his amended income and expenses statements, which could have led to a reasonable inference questioning the credibility of the amounts listed therein.

The trial court is free to believe all, none, or part of a witness's testimony, and thus acted within its discretion in choosing to rely on other evidence regarding Husband's expenses, rather than fully adopting the numbers set forth in Husband's Third Amended Statement of Income and Expenses. *See Hollida*, 131 S.W.3d at 915-16. For purposes of our review, his Third Amended Statement of Income and Expenses is contrary evidence that we must disregard. *See Ivie*, 439 S.W.3d at 200.

Moreover, the Judgment expressly indicates the trial court weighed the conflicting evidence and determined an amount for Husband's reasonable monthly expenses based on the credible evidence before it. *See Hollida*, 131 S.W.3d at 915. We defer to the trial court's determination on this matter even if the evidence could have supported a different conclusion. *Woodard*, 201 S.W.3d at 561; *see also French*, 365 S.W.3d at 291.

### ii. Whether Husband is Unable to Support Himself Based on the Maintenance Award and Other Orders in the Judgment

Husband also complains he is unable to support himself if he must pay the maintenance award in addition to the following amounts he was ordered to pay as part of the Judgment, (1) expenses for the children; (2) loan payments to his father; (3) loan payments to his brother; (4) Wife's credit card debt; (5) costs of litigation; (6) the majority of the tax debt; and (7) child support for the months when the parties' youngest child lives with Wife.

With regard to the first two categories of expenses—expenses for the children and loan payments to Husband's father—the trial court's Judgment and incorporated Exhibit F indicate the court actually accounted for them as part of its calculation of Husband's reasonable needs. The trial court specifically designated as one of Husband's personal monthly expenses: "Loan repay [Husband's father] ... $4,250.00." Moreover, all of the expenses Husband was ordered to pay relating to the children were listed in their own category in the breakdown of Husband's reasonable needs. Based on the credible evidence including Husband's testimony, the trial court found Husband incurs $11,685.20 in reasonable monthly expenses for the children alone. Therefore, any alle-

gation the trial court did not consider Husband's expenses for the children or the loan payments to his father in determining Husband's reasonable needs and his ability to pay the maintenance award is without merit.

▆ And as to the loan payments to Husband's brother, the trial court found based on the "undisputed evidence" that this loan should not be included in Husband's monthly reasonable expenses. In determining the maintenance award, the trial court considered the fact that Husband owes a $100,000 promissory note to his brother, which arose from his brother being unhappy that 7196 LLC, Husband's real estate entity, was receiving rent from West County Volvo resulting in a profit to Husband and Wife. Husband's brother wanted to be repaid a portion of the profit paid to Husband and Wife, and so Husband promised to pay his brother annual installment payments of $50,000. However, the trial court found the facts surrounding this promissory note revealed Husband did not make regular monthly payments on the note, as Husband had been with respect to the promissory notes to his father. Thus, as Husband had not been making regular monthly payments on the loan, and may only be obligated to make additional annual payments in the future, the trial court determined Husband's loan payment to his brother was not one of Husband's reasonable monthly expenses. We defer to the court's findings on this matter. *See L.G.T.*, 442 S.W.3d at 100; *Hollida*, 131 S.W.3d at 915.

▆ With respect to Husband's first three complaints in this sub-point, we reviewed them because Husband sufficiently developed these challenges by supporting them with some authority and argument. However, as to Husband's challenges to Wife's credit card debt; costs of litigation; the majority of the tax

debt; and child support for the months when the parties' youngest child lives with Wife, we find Husband has failed to sufficiently develop these arguments for our review. If a party fails to support a contention with relevant authority or argument beyond conclusory statements, the point is deemed abandoned. *Carlisle v. Rainbow Connection, Inc.*, 300 S.W.3d 583, 585 (Mo. App. E.D. 2009); *Roberson v. KMR Const., LLC*, 208 S.W.3d 320, 322 (Mo. App. E.D. 2006). Arguments on appeal must explain why, under the circumstances of the case, the law supports the appellant's claim of reversible error. *Carlisle*, 300 S.W.3d at 585 (citing Rule 84.04(e)).

Here, the argument portion of Husband's brief makes one passing reference to the trial court's order regarding costs of litigation, and only mentions the orders as to Wife's credit card debt, the majority of the tax debt, and child support twice. The entirety of Husband's discussion regarding his challenges to the maintenance award in light of these orders are to merely list each of the amounts he is required to pay pursuant to the Judgment. Husband's argument about these orders cites to no authority, lacks any legal analysis as to why they rendered the maintenance award error, and fails to go beyond conclusions such as "[Husband] cannot support himself." Because Husband's argument consists of bare conclusions without showing how the law or the evidence support his claims of reversible error, Husband has failed to sufficiently develop his arguments relating to the remaining trial court orders and has preserved nothing for our review. *See id.* at 585-86; *Roberson*, 208 S.W.3d at 322.

As a final note, insofar as Husband purports to independently challenge any of the above orders in the trial court's Judgment, Husband has not preserved any of

those arguments for appeal as he failed to bring separate points on appeal regarding them. *Hollida*, 131 S.W.3d at 916 n.6 ("[i]ssues raised only in the argument portion of the brief are not preserved for review") (quotations omitted). Moreover, to the extent Husband's fourth point on appeal can be read as asserting a claim of cumulative error, Husband failed to raise a claim of cumulative error as a point on appeal. Therefore, Husband has failed to preserve a claim of cumulative error for review. *See id.*

### iii. Conclusion as to Husband's Fourth Point on Appeal

Based on the foregoing, the trial court's findings on Husband's reasonable needs are supported by substantial evidence. Additionally, the trial court did not abuse its discretion in finding Husband is able to support himself while paying the maintenance award along with other orders in the Judgment. Point four is denied.

### b. Whether the Trial Court Correctly Calculated Husband's Income

In Husband's fifth and sixth points on appeal, he argues the trial court erred in calculating his income. In his fifth point, Husband maintains the court made inconsistent findings in the Judgment and the Judgment is not supported by substantial evidence. And in his sixth point on appeal, Husband asserts the trial court misapplied the law by imputing income to him because there was no evidence Husband deliberately or voluntarily limited his work to reduce his income, lost a job, or failed to accept job offers. We disagree.

Husband complains of two alleged errors in the trial court's determination that his monthly income was $47,146.75. First, Husband argues the court erred in finding there was no pass-through income to be added in Husband's income calculation and

then using Husband's 2014 gross income, which included pass-through income, in determining Husband's income for purposes of maintenance. Husband claims he was attributed income he did not actually realize, because pass-through income is income to the *business* that is taxed to the business's owners.[12] Moreover, Husband claims the court's calculation to determine his monthly income for purposes of maintenance—dividing Husband's 2014 gross income by twelve to reach a monthly income figure, and then adding in the Duke Reinsurance income—improperly imputed income to him.

 As to the first alleged error, we need not determine whether the trial court erred or improperly imputed income to him by using Husband's 2014 gross income in calculating Husband's income for purposes of maintenance,[13] because Husband has failed to demonstrate he was prejudiced. Appellate review of a trial court's judgment is for prejudice, not mere error. *Pruett v. Pruett*, 280 S.W.3d 749, 751 (Mo. App. S.D. 2009). Thus, our Court will not reverse a judgment unless prejudice is shown, i.e., the error must have materially affected the merits of the action. *Id.*; *Gerecke v. Gerecke*, 954 S.W.2d 665, 671 n.14 (Mo. App. S.D. 1997) (citing *Lewis v. Wahl*, 842 S.W.2d 82, 84-85 (Mo. banc 1992)); *see also* Rule 84.13(b). In order to justify a change on appeal, the maintenance amount must be "patently unwarranted or wholly beyond the means of the paying spouse." *Valentine*, 400 S.W.3d at 23; *see also Rombach v. Rombach*, 867 S.W.2d 500, 505 (Mo. banc 1993).

 Here, Husband has failed to show the requisite prejudice, because Husband's monthly income using the calculation he proposes would not have required an adjustment to the maintenance award. Husband contends the trial court improperly included $169,308 of pass-through income from Suntrup Ford Westport and $79,488 of pass-through *loss* from West County Volvo, for a total of $89,820, in the calculation of Husband's income. If the court would have subtracted that figure from Husband's 2014 gross income, then added in the Duke Reinsurance "loans," and divided this figure by twelve, Husband's monthly income would amount to $39,661.75. This figure still allows Husband to pay his personal monthly expenses amounting to $9,342 and the children's monthly expenses equaling $11,685.20, along with the maintenance award of $14,617, and have a balance of $4,017.55 leftover per month. Based upon this finding, Husband has failed to show the maintenance amount is wholly beyond his means so as to justify a reversal. *See id.*[14]

---

12. *See Black's Law Dictionary* 1598 (9th ed. 2009) (definition of pass-through taxation).

13. Although we need not rule on this alleged error, we note it was not per se improper for the trial court to use Husband's income for a single year to determine his income for purposes of maintenance. *See Orange*, 502 S.W.3d at 778 (the trial court may use a party's income for a single year, rather than his history of income, when the specific year is an accurate predictor of the party's income). Here, the court considered Husband's income tax records, testimony, evidence, and the reasonable inferences therefrom in performing its calculation, and concluded there

was no evidence before the court to suggest the monthly income figure it reached was "historically unusually high" or unusually low," i.e., the court found it was an accurate predictor of Husband's income.

14. We also note that unlike in a child support calculation where a precise mathematical formula is used to determine the child support amount, the paying spouse's income is considered for purposes of determining the amount of maintenance only to evaluate whether his income is sufficient to cover his reasonable needs along with paying the maintenance award. This reinforces our position that even if this Court were to assume *arguen-*

■ Second, Husband asserts the trial court should have excluded income from the real estate entities, as a portion of the proceeds from those entities should have been attributed to Wife. Husband's second argument relating to the real estate entities is without merit. As part of the division of marital property, the trial court awarded Husband full ownership of the two real estate entities—7196 LLC and 14400 Manchester, LLC. The trial court granted Wife's request that she be "bought-out" of all of Husband's business ventures. Therefore, the court awarded ownership of the businesses to Husband; Wife was awarded cash equalization payments to account for her ownership interest in each. Although Wife received income from the real estate entities prior to the dissolution of the parties' marriage, it is clear from the Judgment she will no longer receive any of the income they produce. As Husband is now the sole owner of the two real estate entities, he will receive the full monthly income generated by them. Accordingly, the trial court did not err in including income from 7196 LLC and 14400 Manchester, LLC as part of its calculation of Husband's income for purposes of maintenance. Points five and six are denied.

### D. Whether the Trial Court Erred in Awarding Wife Attorney's Fees for Appeal

■ In his seventh point on appeal, Husband contends the trial court erred in awarding Wife $25,000 for attorney's fees on appeal. For the reasons set forth below, we agree.

### 1. Standard of Review and General Law Relating to Husband's Claim

*do* the trial court erred in computing Husband's income for purposes of maintenance, any error would not require reversal because Husband has failed to demonstrate the main-

■ Our Court reviews an attorney's fees award made pursuant to section 452.355.1 for an abuse of discretion. *Fike v. Fike*, 509 S.W.3d 787, 802 (Mo. App. E.D. 2016). "An abuse of discretion occurs if the award was clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of deliberation." *Id.* at 802-03 (quotations omitted). "The trial court is considered an expert as to the necessity, reasonableness, and value of attorney's fees and thus, the trial court's decision is presumptively correct." *Kropf v. Jones*, 489 S.W.3d 830, 841 (Mo. App. E.D. 2015) (quotations omitted).

Pursuant to section 452.355.1:

Unless otherwise indicated, the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment.

■ The party requesting an award of attorney's fees on appeal bears the burden of proving entitlement to such an award. *Alabach v. Alabach*, 485 S.W.3d 386, 388 (Mo. App. E.D. 2016) ("*Alabach II*"). Further, the party must demonstrate the extent of the necessary services to be rendered by counsel and related expenses. *Goins v. Goins*, 406 S.W.3d 886, 891 (Mo.

tenance amount is patently unwarranted or wholly beyond his means. *See Valentine,* 400 S.W.3d at 23.

banc 2013). In determining whether the moving party is entitled to appellate attorney's fees under section 452.355.1, the trial court must consider the financial circumstances of the parties since the dissolution, employment or non-employment income of each party, and debts owed by each party. *Id.*; *Alabach II*, 485 S.W.3d at 388. The trial court shall consider the finances of the parties since dissolution, even if the time elapsed between the dissolution hearings and the hearing on a motion for attorney's fees is relatively short. *Layden v. Layden*, 514 S.W.3d 667, 678 (Mo. App. E.D. 2017); *Potts v. Potts*, 303 S.W.3d 177, 197 (Mo. App. W.D. 2010).

## 2. Relevant Facts and Analysis of Husband's Claim

The last day the trial court heard evidence on the parties' petitions for dissolution was November 16, 2015. On September 20, 2016, ten months after the close of all the evidence, Wife filed a motion requesting attorney's fees on appeal. In Wife's motion, she made four allegations, (1) Husband filed a notice of appeal from the trial court's Judgment on May 25, 2016; (2) Wife did not have the financial ability to pay attorney's fees and costs for the appeal; (3) Husband had extraordinary income, and had the ability to pay Wife's attorney's fees and costs; and (4) Husband still owed Wife for sums due under the Judgment. Wife's motion for attorney's fees on appeal was unverified, and she did not file any affidavits, exhibits, or other evidence in support of the motion.

Husband filed written objections to the motion for attorney's fees on October 10, 2016; Husband's response was also unverified, and no affidavits, exhibits, or other evidence were attached. Husband's objections alleged, (1) Wife had received significant resources in the months following the Judgment, in that Husband had paid Wife amounts ordered by the court; (2) Wife

had the ability to pay her attorney's fees; (3) Wife was in a better position to pay her attorney's fees than Husband; and (4) Wife failed to make the requisite showing of the services to be rendered by counsel and related expenses, as required before receiving an award of attorney's fees on appeal.

On October 11, 2016, the trial court held a hearing on Wife's motion for attorney's fees on appeal. During the hearing, which was held off the record, the trial court heard arguments from counsel but received no evidence related to Wife's request. The trial court subsequently issued an order and judgment granting Wife's motion, which states in relevant part:

> The [c]ourt takes judicial notice of its file, the motions pending before it, the arguments of counsel and the equities of the situation.

> Being fully advised, the [c]ourt hereby:

> . . .

> 2. Grants [Wife's] motion for attorneys' fees on appeal in the amount of $25,000.00 (to be in addition to, not to replace, amounts due to [Wife] under the terms of the dissolution judgement [sic] ), same to be satisfied no later than December 5, 2016, by 5 pm.

We find two recent decisions of our Court dispositive on this point. *See Layden*, 514 S.W.3d at 677-78; *Alabach II*, 485 S.W.3d at 387-89. In *Alabach II*, the wife filed a motion for attorney's fees on appeal, which was granted by the trial court. 485 S.W.3d at 387-88. This Court reversed, as we found the record was completely inadequate for us to evaluate on appeal whether the trial court was correct in awarding the wife attorney's fees on appeal. *Id.* at 388-89. In reaching its conclusion, the Court found the trial court did not make a record of the hearing on the motion, did not receive any evidence at the

hearing, and heard no testimony regarding the wife's request for fees. *Id.* at 388. We further reasoned the trial court's judgment on the motion for attorney's fees "was a single paragraph and did not include findings of fact upon which it based its determination." *Id.* Based on the foregoing, the *Alabach II* Court concluded the wife failed to establish she was entitled to an award of attorney's fees on appeal. *Alabach II*, 485 S.W.3d at 388-89; *see also Layden*, 514 S.W.3d at 677-78 (similarly describing *Alabach II*).

Additionally, in *Layden*, the trial court granted the wife's motion for attorney's fees on appeal, which merely alleged she lacked sufficient funds to pay an appellate attorney. 514 S.W.3d at 677, 678. Our Court reversed, finding "the record [was] devoid of what, if any, evidence was presented to the trial court." *Id.* at 678. The reasoning underlying the *Layden* decision included: the wife did not attach any exhibits to the motion so as to allow the trial court to determine her need for attorney's fees; the court did not make a record of the hearing on the wife's motion; and the record contained no indication the trial court considered any other evidence in awarding wife attorney's fees. *Id.* Moreover, the Court found the short judgment contained no findings of fact on the motion or any references to the factors the court is required to consider in awarding attorney's fees under section 452.355.1. *Id.* Therefore, the *Layden* Court reversed and remanded for further proceedings on the issue, with instructions that the trial court consider the parties' financial history since the judgment of dissolution and other relevant factors in section 452.355.1 and make findings on same. *Id.*

Similarly here, the record is "totally inadequate" to permit this Court to evaluate whether the trial court properly granted Wife's motion for attorney's fees on ap-

peal. *Alabach II*, 485 S.W.3d at 388; *see also Layden*, 514 S.W.3d at 678. Wife's motion contained bare allegations that she lacked the financial ability to pay her attorney's fees and costs for the appeal and that Husband had a better ability to pay for her attorney's fees. Moreover, Wife did not attach any affidavits or exhibits to her motion, and the record contains no indication the trial court considered other evidence in determining whether Wife needed her attorney's fees to be paid. Finally, the trial court's judgment on the matter lacked any findings of fact on the parties' financial history since the dissolution Judgment, nor did it reference any of the factors the court is required to consider in awarding attorney's fees under section 452.355.1.

Based on the foregoing, Wife has failed to establish she is entitled to an award of attorney's fees on appeal. *See Alabach II*, 485 S.W.3d at 388-89. Thus, we find it necessary to reverse and remand to the trial court for further proceedings on Wife's motion for attorney's fees on appeal. *See Layden*, 514 S.W.3d at 678. On remand, the court shall consider the financial history of the parties since the Judgment, along with other relevant factors as set forth in section 452.355.1. *See id.* Point seven is granted.

## III. CONCLUSION

For the foregoing reasons, we hold the trial court erred in failing to consider Wife's marital property apportioned to her in determining whether Wife is entitled to maintenance. Therefore, we reverse and remand for further proceedings so that the trial court may develop the record, consider how and when Wife is to receive the entirety of her property award and to what extent, if any, the award impacts her income for purposes of maintenance, and if necessary, recalculate the maintenance award so as to reflect Wife's ability to

meet her reasonable needs in light of her portion of the marital assets. We also conclude the trial court erred in awarding Wife $25,000 for attorney's fees on appeal. Therefore, the trial court's order and judgment relating to attorney's fees on appeal is reversed, and we remand the cause for further proceedings consistent with this opinion. The Judgment is affirmed in all other respects.

Mary K. Hoff, J., and Lisa P. Page, J., concur.